## FIRST NATIONAL BANK OF SHREVEPORT ET AL. *v.* LOUISIANA TAX COMMISSION ET AL.

No. 293.   Argued January 12, 1933.—Decided March 20, 1933

*Messrs.* `Howard B. Warren* and *Lewell C. Butler* for appellants.

*Mr. Elias Goldstein,* with whom *Messrs. G. L. Porterie, Aubrey M. Pyburn, H. C. Walker,.Jr.,* and *Leon O'Quin* were on the brief, for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Three national banks, located at Shreveport, Louisiana,—the Commercial National, the First National and the American National—brought, in a district court of that State, separate suits against the Tax Commission and officials of Caddo parish, to annul the assessment of all taxes, other than upon real estate, which had been imposed upon their corporate property for the year 1930, under Louisiana Act 14 of 1917, as amended by Act 116 of 1922 and Act 221 of 1928. The claim in each case was that the statute as applied is void, because other moneyed capital employed in the same locality in competition with the capital of the plaintiff is not taxed at all, or is taxed less heavily, in violation of both § 5219 of the Revised Statutes of the United States and the equality clause of the Fourteenth Amendment.[1]

---

[1] There was also, in each case, a claim that a small tax had been laid illegally upon the plaintiff's furniture and fixtures. The rights of each plaintiff in this regard were expressly reserved by the decree of the Supreme Court of the State.

The three cases were by agreement consolidated for trial; and were heard upon the same evidence, which in abbreviated form occupies, with the exhibits, 617 pages of the printed record. In each case judgment was entered for the plaintiff; and in each the defendants took a separate appeal to the Supreme Court of Louisiana, which reversed the judgments of the trial court. 175 La. 119; 143 So. 23, 28. The plaintiffs appealed to this Court; and the defendants moved to dismiss the appeal on the ground that the plaintiffs had embraced in a single appeal the separate judgments rendered in the three cases. Consideration of that motion was postponed to the argument on the merits.

The argument for dismissal is that the cases had been consolidated below only for the purpose of trial; that since there was no true consolidation of the causes below, and a separate judgment was rendered in each, the separate causes cannot be brought for review to this Court by a single appeal. Compare *Brown* v. *Spofford,* 95 U.S. 474, 484–485. The record discloses that a complete consolidation of the causes was effected. Not only were the three cases consolidated for trial in the District Court; they were taken to the Supreme Court of the State, on a single transcript; were there docketed and argued as one case; and were there disposed of by a single written opinion. The record shows also that a joint petition for a rehearing was filed and likewise disposed of by a single opinion. The motion to dismiss the appeal is denied.

The claims of invalidity rest upon the following provisions of the Louisiana laws. The real estate of all banking corporations, state or national, is assessed to the corporation at its full value and the shares are assessed to the stockholders at their book value after deducting the value of the real estate. No other tax is laid on the property of a bank. Corporations other than those engaged in banking are taxed by assessing to them all of their prop-

erty not exempt from taxation, in the same manner that the property of an individual is assessed to him. The shares of stock in such corporations are not taxed. The discrimination charged is that under these statutes all banking capital is taxed, whereas a large part of the moneyed capital employed in competition with the plaintiffs by non-banking corporations escapes taxation, wholly or in part, by reason of the following provisions of the local law:

(a) Article X, § 4, of the Louisiana Constitution, which exempts from taxation:

" Cash on hand or on deposit; loans or other obligations secured by mortgage on property located exclusively in the State of Louisiana, and the notes or other evidence thereof; loans by life insurance companies to policyholders, secured solely by their policies; loans by homestead associations to their members, secured solely by stock of such associations; debts due for merchandise or other articles of commerce or for services; obligations of the State or its political subdivisions; household property of the value of one thousand dollars; legal reserve of life insurance companies organized under the laws of this State; . . ."

(b) Act 24 of the Extra Session of 1918, which allows, in the assessment of credits, an offset for accounts payable, bills payable, and other liabilities of a similar character. Act 163 of 1924, which provides that bonds of other states and political subdivisions thereof, bonds of railways, railroads and other public utilities, manufacturing and industrial corporations, and bonds secured by real estate, except such as are exempt from taxation by law, shall be assessed at 10 per cent of their market value.

*First.* It is contended that the statutes violate, on their face, the equal protection clause of the Fourteenth Amendment, since banks are taxed more heavily than loan companies, finance and securities companies, pawn-

brokers, homestead and building associations, Federal Joint Stock Land Banks, life insurance companies, real estate mortgage and investment, or bond and investment brokers; and that the court must take judicial notice that all of these other corporations lend money in competition with the plaintiffs. That contention is unfounded. If we may take judicial notice of the functions of these alleged competitors of the plaintiffs, there appears ample basis for the classification, among other things, in this: There is a fundamental difference between banks, which make loans mainly from money of depositors, and the other financial institutions, which make loans mainly from the money supplied otherwise than by deposits. Compare *Northwestern Mutual Life Ins. Co.* v. *Wisconsin*, 247 U.S. 132, 140–141; *Louisville Gas & Electric Co.* v. *Coleman*, 277 U.S. 32, 40.

*Second.* It is contended that the statute as applied must be held void under § 5219 of the Revised Statutes of the United States, since it appears that, during the tax year, moneyed capital was employed by non-banking corporations in some lines of business in which the plaintiffs are authorized to engage. In other words, it is claimed that inconsistency of the state statutes with § 5219 may be established without proving the fact that the plaintiffs were actually competing, during 1930, in some line of business in which the non-banking corporations were engaged. The trial court, in rendering judgment for the plaintiffs, approved this contention. But it is unfounded. To establish the invalidity, it is necessary to prove not only that the plaintiffs were empowered by law and authorized by their stockholders to engage in a competitive line of business, but that, during the tax year, moneys of these national banks were in fact employed in substantial amount in some line of business which was carried on, during the year, by less heavily taxed non-banking concerns. It is as necessary to prove that the

bank's capital was so employed as it is to prove that moneyed capital was actually employed by others in substantial competition with the national banks. Compare *First National Bank of Garnett* v. *Ayers*, 160 U.S. 660, 667; *National Bank of Wellington* v. *Chapman*, 173 U.S. 205, 217–219; *Georgetown National Bank* v. *McFarland*, 273 U.S. 568. For plaintiffs are entitled to the relief against statutes alleged to be unconstitutional only if the statute as applied discriminates injuriously against them. *Supervisors* v. *Stanley*, 105 U.S. 305, 314. It is argued that national banks might conceivably be prevented from engaging in actual competition with other moneyed capital by reason of the very features complained of in the taxing statutes. Compare *People ex rel. Pratt* v. *Goldfogle*, 242 N.Y. 277, 302; 151 N.E. 452. But no suggestion is made that such was the situation in the case at bar.

*Third.* The contention mainly relied upon is that, upon the evidence, it appears that moneyed capital of the plaintiffs was employed during the tax year in several lines of business in which moneyed capital was also employed by non-banking corporations; and that the latter were not taxed thereon.

(a) The item most strenuously urged upon us is that the plaintiffs were engaged in lending money on mortgages of real estate, a line of business in which many mortgage companies, insurance companies, building and loan associations, and individuals were also engaged; and that the latter escaped taxation thereon. The record discloses that each of the banks held real estate mortgages in a substantial amount. But the fact that the banks held mortgages does not prove that they lent money on the security of those mortgages. These may have been taken to secure pre-existing liabilities or as additional security for personal loans. The Supreme Court found: " The testimony leaves no doubt that there was no com-

petition with the national banks on the part of any concern lending money on mortgage of real estate, because national banks will never handle such loans." The record contains evidence ample to support that finding.

(b) Other items relate to alleged competition of the banks with the capital employed by loan companies, so-called Morris Plan and Morgan Plan companies, and automobile finance companies, in the making of small loans and the financing of purchases of automobiles and household goods. The record shows that the plaintiff banks conducted small-loans departments. But there was evidence to indicate that those to whom the banks granted such loans differed as a class from those who borrowed from the institutions alleged to be competing. The Supreme Court found: " The small loan companies, complained of in this suit, are those that make only loans not exceeding $300, and that are allowed to charge interest at the rate of 3½ per cent per month. The loans, as a rule, are secured by chattel mortgages. The testimony of the officers of these companies, and of the officers of the national banks, leaves no doubt that these small loan companies are not competitors of the national banks. The business of the small loan companies, the same as that of the pawnbrokers, is not in any class of business done by national banks, and is not in competition with any of the business done by national banks. The business of the Morris Plan Company and that of the Morgan Plan Company is the making of small loans, averaging $180 payable out of the borrower's salary. The testimony of the bank officials shows that the business of such companies is not in competition with the business done or desired by the national banks. And that is true also of the so-called finance and securities companies, whose business is to lend money on long series of notes given for the price of automobiles, refrigerators, radios, etc., and secured by

chattel mortgages. The national banks would never handle such business. They prefer to—and do in fact—lend to such companies." These findings are supported by the record.

As we should not be warranted in disturbing these, or any of the other, findings of the Supreme Court complained of, compare *Georgetown National Bank* v. *McFarland*, 273 U.S. 568, we have no occasion to consider an alternative ground urged for affirmance—that the operation of the taxing system of the State resulted, in fact, in substantial equality between bank shares and other moneyed capital. *Affirmed.*