**TOY NAT. BANK OF SIOUX CITY, IOWA, v. SMITH, County Treasurer, et al.**

**IOWA JOINT STOCK LAND BANK OF SIOUX CITY, IOWA, v. SAME.**

**LIVE STOCK NAT. BANK OF SIOUX CITY, IOWA, v. SAME.**

**Nos. 695, 696, 938.**

District Court, N. D. Iowa, W. D.
Oct. 22, 1934.

Edwin J. Stason, of Sioux City, Iowa, for plaintiffs Toy Nat. Bank and Iowa Joint Stock Land Bank.

Peter S. Rask, of Minneapolis, Minn., and Edwin J. Stason, of Sioux City, Iowa, for plaintiff Live Stock Nat. Bank.

C. M. Stilwill, M. E. Duckworth, and A. R. Strong, all of Sioux City, Iowa, for defendants.

WOODROUGH, Circuit Judge.

These are three actions at law, consolidated, brought to recover taxes paid on the shares of stock of each of the plaintiff banks alleged to have been assessed and levied in violation of section 5219 of R. Stat. U. S., 12 USCA § 548, and the equal protection clause of the Federal Constitution. The Toy National Bank seeks to recover taxes so paid for the years 1923 to 1928, inclusive, in the amount of $40,292.83, with interest. The Iowa Joint Stock Land Bank seeks to recover taxes thus paid for the years 1923 to 1925, inclusive, in the amount of $27,733.97 with interest. The Live Stock National Bank seeks to recover taxes so paid in the amount of $15,593.25 for the years 1927 to 1931, inclusive.

Demurrers were filed to the original petitions of the Toy National Bank, the Iowa Joint Stock Land Bank, and the Security National Bank, and upon hearing the demurrers were overruled by Judge Scott on February 5, 1930, with an elaborate opinion responding to the legal questions involved. Toy Nat. Bank v. Nelson (D. C.) 38 F.(2d) 261. The cases came on for hearing on the amended petition of the Live Stock National Bank and the amended and substituted petitions of the Toy National Bank and the Iowa Joint Stock Land Bank and the answers and replies. The amended and substituted petitions of the Toy National Bank and the Iowa Joint Stock Land Bank alleged more in detail the difficulties of procedure involved to prosecute their claims before the statutory board of review, but did not set forth new causes of action. A jury was waived by stipulation of the parties, and the trial of the three cases consolidated was had to the court.

The question first presented is whether the order overruling the demurrers became the law of the case in its further progress in the trial court. The general rule is that, when a court has considered and determined a point in a case its conclusion becomes the law of the case, unless or until reversed by an appellate court, subject, of course, to the general authority of courts to vacate or set aside their judgments. 15 C. J. 961; Plattner Implement Co. v. International Harvester Co. (C. C. A. 8) 133 F. 376, 378; Hardy v. North Butte Min. Co. (C. C. A. 9) 22 F.(2d) 62; Commercial Union v. Anglo-South American Bank (C. C. A. 2) 10 F.(2d) 937; Cherry v. Howell (C. C. A. 2) 66 F.(2d) 713, 715; Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152; Universal Oil Products Co. v. Standard Oil Co. (D. C.) 6 F. Supp. 37; Friederichsen v. Renard (C. C. A. 8) 231 F. 882. The rule is one of comity and convenience in the interests of orderly judicial procedure; otherwise great confusion might arise if each judge called to sit in a case should set up his own independent opinion upon a question which had been already ruled upon. Judge Walter H. Sanborn, in the case of Plattner Imp. Co. v. International Harvester Co., supra, stated the rule as follows: "That rule is 'that the various judges who sit in the same court should not attempt to overrule the decisions of each other * * * except for the most cogent reasons.' * * * The rule * * * is a rule of comity and of necessity. * * * By its terms it permits the 'most cogent reasons,' such as a certainty that a previous ruling was erroneous * * * to present exceptions to it. But the rule itself, and a careful observance of it, are essential to the prevention of unseemly conflicts, to the speedy conclusion of litigation, and to the respectable administration of the law, especially in the national courts, where many judges are qualified to sit at the trials, and are frequently called upon to act in the same cases."

In the early and oft-cited case of Wakelee v. Davis (C. C.) 44 F. 532, 533, the court states that the ruling upon the proposition of law presented upon demurrer "is the law of this court, to be followed, upon similar facts, until a different rule is laid down by the supreme court." A subsequent decision by an appellate court upon an identical proposition ruled upon demurrer would present a cogent reason for disturbing the former order. But a mere difference in the interpretation of the import and weight to be given a subsequent decision by an appellate court should not require an annulment of the previous order. Commercial Union v. Anglo-South American Bank (C. C. A. 2) 10 F.(2d) 937. The purpose of the rule is to leave the litigants in the identical position in which they would have been had the same judge continued throughout the progress of the trial. Cherry v. Howell (C. C. A. 2) 66 F.(2d) 713; Plattner Imp. Co. v. International Harv. Co., 133 F. 376 (C. C. A. 8).

In the application of this rule to the instant case, I have noted carefully what Judge Scott decided in overruling the demurrers to the petitions. His rulings were in effect as follows:

(1) That the facts stated in the petitions were sufficient to show a violation of the fed-

eral statute (12 USCA § 548); (2) that a tax levied on shares of national banks in violation of section 5219, Rev. Stat. U. S. (12 USCA § 548), is void; (3) that the plaintiff banks did not waive their remedy to recover a void tax by failing to exhaust some administrative remedy; (4) that the plaintiffs did not waive their remedy to recover a void tax by failing to make formal protest; (5) that, under the Iowa statutes and decisions, an action at law is the proper remedy to recover void taxes illegally collected; (6) that the taxing statute of Iowa does not in its provisions contravene the equal protection clause of the Constitution of the United States nor the federal statute prohibiting the state from taxing national bank shares at a greater rate than other competing moneyed capital; (7) that the assessment and taxation of the shares of the Iowa Joint Stock Land Bank shall be in the manner and subject to the conditions and limitations contained in 12 USCA § 548, with reference to the shares of national banks (12 USCA § 932).

My first care is whether any of these propositions of law have been overruled by either the Circuit Court of Appeals or the Supreme Court of the United States since the ruling on the demurrer was made. In Nelson v. First Nat. Bank of Sioux City (C. C. A. 8) 42 F.(2d) 30, this court held that all adequate administrative remedies in matters of taxation had to be exhausted before resort to the courts could be had. The court held that the record failed to reveal facts showing the inadequacy of the administrative remedy in the particular case, but recognized as in Munn v. Des Moines Nat. Bank (C. C. A. 8) 18 F.(2d) 269, that peculiar facts might render the administrative remedy inadequate. The same rule is announced in First National Bank v. Harrison County (C. C. A. 8) 57 F.(2d) 56. Undoubtedly, in deference to these opinions, these plaintiffs amended their petitions to set forth the facts more completely, which they contended rendered resort to the statutory remedy entirely inadequate. In Security Nat. Bank v. Young (C. C. A. 8) 55 F.(2d) 616, 84 A. L. R. 100, which also involved an action at law to recover taxes illegally assessed and levied against the plaintiff national bank in South Dakota, this court, speaking through Judge Gardner, held that taxes levied in violation of section 5219 were illegal and void; that the administrative remedy accorded by the South Dakota statute was inadequate; but that the taxes had been paid voluntarily, and therefore could not be recovered. That

case, governed by the well-recognized rule as to voluntary payment, is not decisive of this one, inasmuch as section 7235 of the Code of Iowa and the decisions of the Supreme Court of Iowa, as interpreted by Judge Scott, present an exception to the general rule and permit void or illegal tax payments to be recovered, even though voluntarily made and without protest. Slimmer v. Chickasaw County, 140 Iowa, 448, 118 N. W. 779, 17 Ann. Cas. 1028; Richards v. Wapello County, 48 Iowa, 507; Dickey v. County of Polk, 58 Iowa, 287, 12 N. W. 290; Commercial Nat. Bank v. Board, 168 Iowa, 501, 150 N. W. 704, Ann. Cas. 1916C, 227. The decision of the Court of Appeals, therefore, does not conflict with that of Judge Scott. In Knowles v. First Nat. Bank (C. C. A. 8) 58 F.(2d) 232, the court affirmed a decree permanently enjoining the collection of taxes against the shares of the plaintiff bank in excess of that collected from other competing moneyed capital. In Iowa-Des Moines Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265, the Supreme Court declined to consider the adequacy of the administrative remedy, and held that the more favorable taxation of competing domestic corporations entitled the plaintiffs to the relief sought (mandamus to compel refunds). The most recent case of First Nat. Bank v. Louisiana Tax Commission, 289 U. S. 60, 53 S. Ct. 511, 77 L. Ed. 1030, 87 A. L. R. 840, an action to annul taxes levied against the shares of plaintiff, was decided on the particular facts disclosed, and no discrimination was found to have existed. An examination of these cases convinces that the rulings of Judge Scott upon the legal propositions involved should be taken as the law of this case to be strictly followed by me.

The question then is whether the plaintiffs have by their proof sustained the burden of showing that the tax imposed upon the shares of stock of the plaintiffs is at a greater rate than that imposed upon other moneyed capital in the hands of individuals employed in substantial competition therewith. The Supreme Court has defined moneyed capital in competition with national banks as follows: "Moneyed capital is brought into such competition where it is invested in shares of state banks or in private banking, and also where it is employed, substantially as in the loan and investment features of banking, in making investments, by way of loan, discount or otherwise, in notes, bonds or other securities with a view to sale or repayment and reinvestment." First Nat. Bank v. Anderson, 269 U. S. 341, 46 S. Ct. 135, 138,

70 L. Ed. 295, and cases there cited; First Nat. Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1.

In First Nat. Bank v. Hartford, supra, page 558 of 273 U. S., 47 S. Ct. 462, 465, the Supreme Court said:

"Our conclusion is that section 5219 [12 USCA § 548] is violated wherever capital, substantial in amount when compared with the capitalization of national banks, is employed either in a business or by private investors in the same sort of transactions as those in which national banks engage and in the same locality in which they do business."

But before these plaintiffs can succeed "it is necessary to prove not only that the plaintiffs were empowered by law and authorized by their stockholders to engage in a competitive line of business, but that, during the tax year, moneys of these national banks were in fact employed in substantial amount in some line of business which was carried on, during the year, by less heavily taxed nonbanking concerns. It is as necessary to prove that the bank's capital was so employed as it is to prove that moneyed capital was actually employed by others in substantial competition with the national banks." First Nat. Bank v. Louisiana Tax Commission, 289 U. S. 60, 53 S. Ct. 511, 512, 77 L. Ed. 1030, 87 A. L. R. 840.

The evidence shows that the Toy National Bank and the Live Stock National Bank were engaged in the field of commercial banking, dealing in unsecured loans, loans secured by stocks and bonds and other personal securities, including warehouse receipts, real estate loans, Liberty bonds, state, county, and municipal bonds, and other bonds, warrants, bankers acceptances, and foreign bonds. The Toy National Bank held loans secured by real estate mortgages for the years 1923 to 1928, respectively, as follows: $6,673; $6,524; $6,736; $4,302; $3,607; and $111,000. The Live Stock National Bank, during the years 1927 to 1931, inclusive, made direct loans secured by real estate mortgages in the following amounts: $20,937.60; $19,462.79; $41,431.89; $27,455; and $13,200. All of these loans, the evidence shows, were direct loans, and were exclusive of second real estate mortgages taken to secure antecedent indebtedness. The Iowa Joint Stock Land Bank was organized pursuant to the Federal Farm Loan Act and dealt exclusively in real estate loans, and at the close of the years 1923 to 1925, inclusive, had net mortgage loans in force in the following amounts: $5,281,236.11; $5,150,702.19; and $6,350,-

114.63. The Toy National Bank and the Live Stock National Bank each had and employed in its business capital and surplus of approximately $350,000; and the Iowa Joint Stock Land Bank had and employed a capital of $375,000.

Section 371 of 12 USCA defines the powers and limitations upon national banking associations in making loans secured by real estate mortgages: "Any national banking association may make loans secured by first lien upon improved real estate, including improved farm land, situated within its Federal reserve district or within a radius of one hundred miles of the place in which such bank is located, irrespective of district lines. * * * The amount of any such loan shall not exceed 50 per centum of the actual value of the real estate offered for security, but no such loan upon such security shall be made for a longer term than five years. Any such bank may make such loans in an aggregate sum including in such aggregate any such loans on which it is liable as indorser or guarantor or otherwise equal to 25 per centum of the amount of the capital stock of such association actually paid in and unimpaired and 25 per centum of its unimpaired surplus fund, or to one-half of its saving deposits, at the election of the association. * * * *"

This amends and increases the authority of national banks to loan money on the security of improved real estate first granted in 1913.

The testimony establishes clearly that there were numerous individuals, firms, and corporations in and near Sioux City engaged in making or dealing in loans secured by mortgages upon real estate in large amounts during the years in controversy. This business was in sufficient volume to satisfy the court that those engaged in it were using moneyed capital in a field in which the plaintiff banks were authorized by statute to engage. But, though the plaintiffs had the right to enter this field of investment, the burden was upon them to show that they actually were actively engaged in loaning substantial amounts upon this form of security. It is not enough that they possessed as one of their incidental powers the right to loan money in limited amounts on the security of improved real estate. First National Bank v. Louisiana Tax Commission, 289 U. S. 60, 53 S. Ct. 511, 77 L. Ed. 1030, 87 A. L. R. 840. Until it is shown that they were so engaged and that there was a substantial competition, it cannot be said that they have been unjustly discriminated against. Id.

On this branch of the inquiry, I have no difficulty in finding that there were substantial sums of moneyed capital assessed at the moneys and credits rate of 5 and 6 mills, which were at all times in competition with the business of the Iowa Joint Stock Land Bank during the years in question. The making of real estate loans was practically the sole business of the Joint Stock Land Bank, and the competition was obvious.

But it appears from the evidence that during the years 1923 to 1927 the amounts of money which the Toy National Bank had invested directly in real estate mortgage loans were very small comparatively, so small that the only fair inference is that the Toy National Bank was not actively in the business of loaning money upon the security of improved real estate. It manifestly was not seeking such business during those years or in any substantial competition with those who were so engaged. It is not shown or suggested that taxation had anything to do with the bank's abstention from substantial real estate mortgage loans, and I conclude that the proof does not sustain recovery in its behalf on account of under assessment of competing moneyed capital invested in real estate mortgage loans during those years. On the other hand, the evidence shows that in the year 1928 the Toy National Bank had invested $110,000 directly in real estate mortgage loans, and its investment to the much greater extent reflects a change of attitude on the part of the bank and shows a substantial engaging in that field of business actively during that year. As there were substantial sums of moneyed capital likewise so invested taxed at rates more favorable than the assessment rate upon the bank shares, the unlawful discrimination for that year is established.

As to the Live Stock National Bank, the comparatively small direct real estate loans which it held during the years 1927, 1928, 1930, and 1931 reflect that the bank was not then in any substantial competition with the capital that was being put into that form of investment. In the year 1929, however, when the bank's investment in such loans reached some $41,431.89, a substantial competition and unlawful discrimination resulted.

With respect to cattle and feeder loans, the testimony of representatives of numerous live stock commission houses revealed little, if any, money invested in competition with the plaintiffs. In fact, much of their paper was immediately discounted through the banks with which they customarily did business. Those who engaged in making such loans, the evidence shows, conducted their business only with the aid of the banks in discounting paper that was satisfactory to them. In no proper sense can they be said to have been in competition with these banks; rather they are important customers.

As to that portion of the testimony which deals with small loan companies engaged in making character or salary loans, and the business of finance and securities companies, whose business is to lend money on long series of notes given for the price of automobiles, refrigerators, radios, etc., I am not persuaded that the evidence is sufficient to sustain the claim of competition. It appears to me from the evidence that the banks do not really seek or compete for that business. First Nat. Bank v. Louisiana Tax Commission, 289 U. S. 60, 53 S. Ct. 511, 77 L. Ed. 1030, 87 A. L. R. 840. In addition, there is much testimony relating to bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business. These investments are not deemed "moneyed capital" within the meaning of section 548, 12 USCA. In this class we may include the moneys and credits assessed to decedent and trust estates which were, in most instances, in the process of liquidation and distribution.

Upon full consideration of the evidence in this case, I am constrained, in the light of such decisions as First Nat. Bank v. Hartford, 273 U. S. 548, 47 S. Ct. 462, 71 L. Ed. 767, 59 A. L. R. 1; State of Minnesota v. First Nat. Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774; Georgetown Nat. Bank v. McFarland, 273 U. S. 568, 47 S. Ct. 467, 71 L. Ed. 779; Iowa-Des Moines Nat. Bank v. Bennett, 284 U. S. 239, 52 S. Ct. 133, 76 L. Ed. 265; and First Nat. Bank v. Louisiana Tax Commission, 289 U. S. 60, 53 S. Ct. 511, 77 L. Ed. 1030, 87 A. L. R. 840, to hold that the record reveals other moneyed capital in the hands of private individuals or firms invested in real estate mortgages in substantial competition with the business normally and actually carried on by the Iowa Joint Stock Land Bank and to the extent pointed out with the business of the other plaintiffs.

Section 6988, Code of Iowa 1927, authorizes those listing moneys and credits for

taxation to deduct the gross amount of all debts in good faith owing by them.

I am persuaded that the assessment of national bank shares under the Iowa statute without permitting the shareholders to deduct from their assessed value the amount of their bona fide indebtedness, while in the case of other moneyed capital in substantial competition therewith improperly assessed at the moneys and credits rate deduction for debts has been allowed, disclosed discrimination forbidden by section 5219 (12 USCA § 548). State of Minnesota v. First National Bank, 273 U. S. 561, 47 S. Ct. 468, 71 L. Ed. 774; Merchants' Nat. Bank v. Richmond, 256 U. S. 635, 41 S. Ct. 619, 65 L. Ed. 1135. Inasmuch as the court has found moneyed capital assessed at the moneys and credits rate competing substantially with the business of plaintiffs in loaning money on real estate to the limited extent herein stated, injurious discrimination forbidden by the statute was established. The failure to permit the shareholders a corresponding deduction in the gross amount of all debts in good faith owing by them would enhance the discrimination already found to exist.

Judgment should be entered against the defendant Woodbury county and in favor of the plaintiff Toy National Bank for that part of the tax paid for the year 1928 which was assessed and levied in excess of the moneys and credits rate of assessment against competing moneyed capital in that year in the amount of $4,205.46; in favor of the plaintiff Live Stock National Bank for that part of the tax paid for the year 1929 which was assessed and levied in excess of the moneys and credits rate of assessment against competing moneyed capital in that year in the amount of $5,508.56; and in favor of the plaintiff Iowa Joint Stock Land Bank for that part of the tax paid for the years 1923 to 1925, inclusive, which was assessed and levied in excess of the moneys and credits rate of assessment against competing moneyed capital in that year in the amount of $20,925.70.

I find no sufficient evidence to show that the retention by the county of the balance of the tax paid will be unjust or discriminatory against the plaintiffs by reason of the deductions of debts allowed to owners of other moneyed capital.

Inasmuch as these tax payments were made without any immediate threat of distraint or execution, recovery of interest thereon should be denied.

Requests have been duly and timely presented by the respective parties for findings of fact and conclusions of law. Those refused have been so marked by the court, and to each refusal exception is allowed. Exception is also allowed to each party to the judgment ordered.