ODOM, Justice.
 

 The defendant, a domestic corporation, failed to pay a corporate franchise or license tax for the years 1933 and 1934. The secretary of state ruled it to show cause why it should not pay the tax, claiming that the tax was due under Act No. 8 of 1932, as amended by Act No. 18 of 1934. The defendant answered that it was exempt from the payment of the tax because all its capital stock was owned by the Union Indemnity Company, an insurance company, to which the provisions of the said acts do not apply.
 

 In the alternative, it is alleged that, if defendant is not exempt from the payment of such tax, then the said acts are unconstitutional for two reasons: First, because they discriminate against the defendant corporation in favor of other corporations in the same class, doing the same kind of business and owned, like the defendant corporation, by a parent corporation subject to regulation and taxation under special laws; and, second, that said acts “discriminate against the defendant corporation in favor of corporations in the same class doing the same kind of business by taxing the borrowed capital of the defendant corporation and exempting the borrowed capital of other corporations, the capital stock of which equals or exceeds the amount of borrowed capital.”
 

 As a second alternative, defendant alleged that it was not due the amount of the tax claimed by the state because it is “based on a past due assumed mortgage, no part of which was borrowed by the defendant corporation and no part of which was ever used or invested in the business of the defendant corporation.” The rule brought by the state was made absolute by the trial judge, the effect of the ruling being that the defendant must pay the tax claimed, plus interest, penalties, and attorneys’ fees. From this ruling the defendant appealed.
 

 Act No. 8 of 1932 levies an annual franchise or license tax on all domestic corporations doing business in this state, except such as are exempt by the terms of the act, “for the privilege of carrying on, doing business, or the continuance of its charter within this State.”
 

 The provisions of the act do not apply to insurance corporations. Section 3 of the
 
 *601
 
 act reads, in so far as it need be quoted, as follows:
 

 “None of the provisions of this Act shall apply to building and loan, homestead, fraternal, benevolent, eleemosynary, religious or educational corporations not operating for profit, nor to banking, insurance or title guaranty corporations, nor to corporations all the capital stock of which (except directors’ qualifying shares, if any) is owned by any bank, banking company, banking firm, banking association or banking corporation.”
 

 All of the corporate stock of the defendant corporation is owned by the Union Indemnity Company, which is an insurance corporation, and, because the provisions of the act do not apply to insurance corporations, it is argued that they do not apply to corporations the capital stock of which is owned entirely by such corporations.
 

 The answer to this argument is that the act itself provides for no such exemption as that claimed. The parent corporation in this case is by the terms of the act exempt from the payment of the tax. But the act does not in terms exempt the auxiliaries or subsidiaries of such corporations from the payment of the tax, and, because it does not, an exemption cannot be allowed.
 

 The' act says in section 1 “that every domestic corporation, except as otherwise provided in this act,” shall annually make and deliver to the secretary of state a report containing certain facts and information and that “said corporations,-” that is, all those not excepted by the act, “shall pay a franchise or license tax.” The provisions of the act apply to all domestic corporations not specifically excepted.
 

 It is perfectly clear that the Legislature did not intend to exempt subsidiaries of insurance corporations from the payment of the tax, because section 3 of the act, which exempts insurance corporations, as well as banks and other corporations, does in precise language say that its provisions do not apply “to corporations all the capital stock of which * * * is owned by any bank, banking company, banking firm, banking association or banking corporation.” In other words, the subsidiaries of banking concerns are specially exempt. But nothing is said about the subsidiaries of insurance companies. If it had been intended that they be exempted from the provisions of the act, the Legislature would have said so, just as it said that the subsidiaries of banks are exempted.
 

 The defendant, Union Building Corporation, owns and operates the Union Indemnity building, an office building in New Orleans. A part of the space in the building is occupied by the Union Indemnity Company, the parent of the defendant corporation, the remaining space being leased to other tenants. The record discloses that the American Safe Deposit Company, a domestic corporation, owns and operates the American Bank building, an office building similar to the Union Indemnity building, and that all of the stock of the American Safe Deposit Company is owned by the American Bank & Trust Company, which occupies a portion of the space in the building, the rest being leased to other tenants. It is clear, therefore, that
 
 *603
 
 the business in which the defendant, Union Building Corporation, is engaged, is precisely the same as that conducted by the American Safe Deposit Company, and it is shown that for the years 1932, 1933, and 1934 the American Safe Deposit Company has not paid a corporate franchise tax, nor has the state demanded of it the payment of such tax.
 

 This gives rise to the plea and the argument that, if the act requires the defendant to pay the tax and exempts another corporation engaged in the same kind of business, there results necessarily an arbitrary, capricious, and unreasonable discrimination against the defendant in violation of section 1, art. 10 of the State Constitution, which provides that “all taxes shall be uniform upon the same class of subjects throughout the territorial limits of the authority levying the tax,” and violative also of the due process clauses of both the State and Federal Constitutions (Const. La.1921, art. 1, § 2; Const.U.S. Amend. 14).
 

 The plea and the argument in support of it would be good if it were shown or patently appeared that the exemption of corporations, the capital stock of which is owned by banking institutions, from the payment of the franchise tax, constituted an arbitrary or capricious discrimination in favor of the subsidiaries of banking corporations.
 

 It is clear that the Legislature intended to and did classify corporations to subserve the purpose of the act, which was to raise revenues for the state. It is clear also that, because certain classes of corporations are exempted from the tax, there is a discrimination in their favor as against those which do not enjoy the exemption. But merely because that is true it does not follow necessarily that the act is invalid. The Legislature may, in its discretion, designate certain classes of persons, firms and corporations to be taxed, and exempt others. The mere fact of a classification or discrimination does not necessarily render the act void. The test is whether the classification or discrimination is based upon some reasonable ground. In American Sugar Refining Company v. State of Louisiana, 179 U.S. 89, 21 S.Ct. 43, 44, 45 L.Ed. 102 (affirming an opinion of this court, 51 La.Ann. 562, 25 So. 447), the United States Supreme Court so held. • In that case the American Sugar Refining Company was ruled to show cause why it should not pay a license tax levied by Act No. 150 of 1890. One of the defenses was that the act was void because it did not impose equally a license tax on all persons engaged in the business of refining sugar and molasses, but discriminated in favor of planters who refined their own sugar and molasses and in favor of planters who granulated syrups for other planters during the rolling season. The United States Supreme Court, in disposing of this defense, said:
 

 “The act in question does undoubtedly discriminate in favor of a certain class of refiners, but this discrimination, if founded upon a reasonable distinction in principle, is valid. Of course, if such discrimination were purely arbitrary, oppressive, or capricious, and made to depend upon differences of color, race, nativity, religious opinions,
 
 *605
 
 political affiliations, or other considerations having no possible connection with the duties of citizens as taxpayers, such exemption would be pure favoritism, and a denial of the equal protection of the laws to the less favored classes. But from time out of mind it has been the policy of this government, not only to classify for purposes of taxation, but to exempt producers from the taxation of the methods employed by them to put their products upon the market.”
 

 We cite this case to illustrate the general rule that, even though a taxing statute creates a classification of subjects for taxation, and thereby makes a discrimination, the statute is not invalid for that reason, if any reasonable ground exists for the classification. It is only when the classification is unreasonable or capricious that the statute is void. Many other decisions of the same court might be cited to the same effect.
 

 In speaking of the distinction which the Legislature is entitled to make between corporations made subject to this franchise or license tax, we made use of the following quotation in Interstate Tax Bureau v. Conway, 180 La. 453, 156 So. 463, 465:
 

 “It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed” — citing Rast v. Van Deman & Lewis Company, 240 U.S. 342, 36 S.Ct. 370, 60 L.Ed. 679, L.R.A. 1917A, 421, Ann.Cas.1917B, 455.
 

 In the recent case of State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 541, 75 L.Ed. 1248, 73 A.L.R. 1464, commonly referred to as the Chain Store Case, the Indiana statute imposing a license tax on stores, graduated upon the number of stores operated under the same management, was attacked on the ground among others, that the “graduation of the tax per store .according to the number of stores under a single ownership and management is based on no real difference between a store part of such a group and one individually and separately owned and operated, or between the business transacted in them; that the number of stores conducted by one owner bears no relation to the public health, welfare, or safety, none to the size of the enterprize as a whole, to its capital, its earnings, or its value; that the classification made by the statute is without basis in fact, is unreasonable and arbitrary, and results in depriving him of his property without due process, and denying him the equal protection of the laws.”
 

 It was not denied by the state that the so-called Chain Store Act was discriminatory. The Court in the course of its opinion said that the act adopted a different measure of taxation for chain stores from that applied to those owned and operated as individual units. The act was sustained on the ground that the discrimination was not arbitrary or capricious, but was founded upon a reasonable distinction between the chain store business and businesses of the same character conducted as individual units. In the course of its. opinion the Court said:
 

 The principles which govern the decision of this cause are well settled. The
 
 *607
 
 power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. Bell’s Gap R. R. v. Pennsylvania, 134 U.S. 232, 10 S.Ct. 533, 33 L.Ed. 892; Southwestern Oil Co. v. Texas, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688; Brown-Forman Co. v. Kentucky, 217 U.S. 563, 30 S.Ct. 578, 54 L.Ed. 883. The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, American Sugar Refining Company v. Louisiana, 179 U.S. 89, 21 S.Ct. 43, 45 L.Ed. 102, or if any state of facts reasonably can be conceived to sustain it. Rast v. Van Deman, 240 U.S. 342, 36 S.Ct. 370, 374, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas.1917B, 455; Quong Wing v. Kirkendall, 223 U.S. 59, 32 S.Ct. 192, 56 L.Ed. 350. As was said in Brown-Forman Co. v. Kentucky, supra, at page 573 of 217 U.S., 30 S.Ct. 578, 580:
 

 “
 
 ‘A
 
 very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.’
 

 "It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the Court make this abundantly clear.” The Court reviewed at great length its own jurisprudence touching' this question.
 

 In the case at bar, if the discrimination made by Act No. 8 of 1932, as amended, is “founded upon a reasonable distinction,” “or if any state of facts reasonably can be conceived that would sustain it,” the act must be upheld, because “a very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or. license tax.” The Legislature- did not, without reason, single out subsidiaries of banking corporations as objects of favoritism. The subsidiaries of banking corporations, the capital stock of which is owned entirely by banking corporations, are nothing more nor less than agencies or instrumentalities of the parent corporations, organized to further the ends of the banking business, in which the parent is engaged. While they are separate corporate entities from the parent corporations,
 
 *609
 
 they are nevertheless, in theory, and in practice, mere banking agencies engaged in some branch of the business which banks are authorized to pursue, so that the exemption of the subsidiaries of banking corporations from the payment of this tax is but an exemption of the banks themselves.
 

 In Interstate Tax Bureau v. Conway, supra, the validity of this act was attacked especially on the ground that section 3 exempts corporations, all of the capital stock of which (except directors’ qualifying shares, if any) is owned by any bank or banking corporation. We dismissed the attack on the grounds that none of the plaintiff corporations were in the same class as banks and banking corporations; that the business of banking is subject to regulation under the police power of the state (citing Noble State Bank v. Haskell, 219 U.S. 104, 105, 31 S.Ct. 186, 55 L.Ed. 112, 32 L.R.A.[N.S.] 1062, Ann.Cas.1912A, 487); that the business of banking is regulated in this state by special statutes, which provide for the taxation both of the property owned by the banks and their capital stock as well. We there pointed out that it was held in First National Bank of Shreveport v. Louisiana Tax Commission, 173 La. 119, 143 So. 23, affirmed by United States Supreme Court, 289 U.S. 60, 53 S.Ct. 511, 512, 77 L.Ed. 1030, 87 A.L.R. 840, “that the state tax on national bank stock was not objectional as creating an unjust discrimination, although only the property and not the capital stock of other corporations was taxed.” (This quotation is from the Interstate Tax Bureau Case.)
 

 We need not discuss the reasons which we think prompted the Legislature in making the distinction complained of in this case. But certainly “a state of facts reasonably can be conceived that would sanction it,” and those facts are that the method of taxing banking corporations in this state is not the same as that of taxing other corporations. Banks and banking corporations are taxed under special laws, which apply only to them. In the case of First National Bank of Shreveport v. Louisiana Tax Commission, supra, the complaint made by the bank was that under the statutes .(Act No. 14, Extra Session of 1917, as finally amended by Act No. 116 of 1922), not only the property, but also the capital stock, of the bank was taxed, whereas the property, but not the capital stock, of other' corporations engaged ‘ in lending money was taxed. It was claimed that this method of taxing banks was an arbitrary, unjust discrimination against banks. The objection was held to be unfounded. Now, if banks cannot be heard to complain on account of what they conceive to be an unjust discrimination against them, we can see no just reason why other corporations should be heard to complain.
 

 Defendant’s next ground of complaint is that the amount of tax claimed is based mainly on “borrowed capital,” when, as a matter 'of fact, it was not using any borrowed capital. The facts are that the defendant corporation has issued and outstanding capital stock amounting to $10,000. It purchased the Union Indemnity building in New Orleans for $1,500,000 and, as pay
 
 *611
 
 ment of the price, assumed and bound itself to pay a note for that amount, secured by special mortgage on the property. No part of this indebtedness seems to have been paid. The state has proceeded upon the theory that the amount of this indebtedness should be put down in the category of “borrowed capital,” as that term is used in the statute. The defendant’s argument is that, inasmuch as the amount of the indebtedness against the building which it assumed was not literally borrowed, it, is not to be added to its capital stock, surplus and undivided profits in arriving at a basis for computing the tax.
 

 This argument, we think, is without merit. The only asset the defendant corporation has is the office building which it operates. Presumably, the building is worth what the defendant agreed to pay for it, which was $1,500,000. It was purchased by defendant without the immediate expenditure of any sum whatever! The purchase price was paid by the assumption of the indebtedness, which in principle is the same as if the corporation had borrowed the amount, paid the price with the proceeds of the loan, and then secured the loan by mortgage on the property. The capital invested by the defendant in its business is the price of the building, and it matters not whether that capital was obtained by assuming the indebtedness or whether it was literally borrowed and put into the business. The result is the same. To hold otherwise would thwart the purpose of the act. It would permit a ten thousand dollar corporation to do a million dollar business by paying a license tax based on the capital stock alone, a subterfuge pure and simple.
 

 Finally, the validity of the act is attacked on the ground, as stated by counsel in her brief, that:
 

 “Act No. 8 of 1932, as originally enacted and as amended, is unconstitutional in another respect, for it taxes the so-called ‘borrowed capital’ of the defendant corporation and does not tax the borrowed capital of corporations, the capital stock of which equals or exceeds the amount of the borrowed capital.”
 

 This, it is said, is an arbitrary, unjust discrimination. This objection is leveled at paragraph 4, § 1, of the act, which reads as follows:
 

 “The said domestic corporation taxed under this act shall determine the amount of the issued and outstanding capital stock, surplus and undivided profits of such domestic corporation, which in no case shall be less than the assessed value of all the property of such domestic corporation in this State for the year for which report is made; provided that if the capital used or invested in the business or enterprise of such corporations includes borrowed capital in excess of the capital stock, surplus and undivided profits of such corporation, such excess or borrowed capital shall be added to the capital stock, surplus and undivided profits as part thereof as the basis for computing the franchise tax under this act and determining the extent of the use of its franchise in this State.”
 

 In paragraph 2, § 1, Act No. 18 of 1934, which amends the above paragraph, the
 
 *613
 
 word “of” is substituted for the word “or” in the clause beginning with the words “such excess,” so that the act now reads, “such excess of borrowed capital shall be added to the capital stock,” etc.
 

 According to counsel’s interpretation of the act, which interpretation it is said is sanctioned by the secretary of state, it matters not what amount of borrowed capital a corporation may use in the conduct of its business, only that portion of it which exceeds the amount of the capital stock, surplus, and undivided profits is to be considered in forming a basis for computing the tax. To illustrate counsel’s point, if a corporation has capital stock, surplus and undivided profits amounting in the aggregate to $100,000 and uses borrowed capital of the same amount, the borrowed capital is not to be considered in computing the tax, because the amount of it does not exceed the amount of the capital, surplus and undivided profits. Hence the borrowed capital escapes taxation. But, if the same corporation uses borrowed capital amounting to $150,000, which exceeds the amount of capital stock, surplus and undivided profits by $50,000, the excess only is taxed.
 

 Again, if the corporation has capital, surplus and undivided profits amounting to $1,000,000, and uses borrowed capital amounting to $750,000, the borrowed capital is not taxed, because the amount of it does not exceed the amount of capital stock, surplus and undivided profits.
 

 If this interpretation be correct, it is readily seen that the act is discriminatory, in that the tax levied might be unequal on corporations of the same class engaged in the same kind of business.
 

 But this interpretation of the act is not correct. Manifestly the Legislature intended that the total amount of all capital made use of by a domestic corporation in the conduct of its business should be used as a basis for computing the franchise or license tax. In arriving at the total amount of capital used the following items are considered: First, the capital stock; second, the surplus, if any; third, undivided profits, if any; and, fourth, borrowed capital, if any.
 

 What the act means by saying that “if the capital used or invested in the business or enterprise of such corporations includes borrowed capital, in excess of the capital stock, surplus and undivided profits, such excess or” (of) “borrowed capital shall be added,” etc., is that, if the corporation uses in the conduct of its business any borrowed or additional capital, that is, capital beside that which was contributed by the stockholders in the purchase of the stock, and the earnings of the corporation, this borrowed or additional capital must be added to the other capital in order to form a basis for computing the tax. The amount of the tax is computed upon the amount of capital used, and, if the corporation uses more capital than it owns, it must pay the tax not only on that which it owns but also on that which it does not own, that which it borrows and puts into the business. The sum total is the amount of “capital used or invested in the business or enterprise of such corporation,” and forms the basis for “computing the franchise tax.”
 

 
 *615
 
 The substitution of the word “of” in the amending act for the word “or” in the original act did not change the meaning of this paragraph.
 

 For the reasons assigned, the judgment appealed from is affirmed.