Bessie **HARRIS, I. J. White, F. J. Brown, Emma Dugger, James L. Bevins, Nancy Boyer, Peter Jones, Leon Howard, Ethel Holmes, and David Collins,** Plaintiffs,

v.

**Earl E. ECHOLS, et al., as Registrars of Pierce County, Georgia,** Defendants.
**Civ. A. No. 370.**

United States District Court
S. D. Georgia, Waycross Division.
Nov. 2, 1956.

---

Lewis L. Scott, Savannah, Ga., for plaintiff.

S. F. Memory, Blackshear, Ga., for defendant.

SCARLETT, District Judge.

### Statement of the Case

The Plaintiffs in the case are Bessie Harris, I. J. White, F. J. Brown, Emma Dugger, James L. Bevins, Nancy Boyer, Pete Jones, Leon Howard, Ethel Holmes and David Collins. The Defendants Earl E. Echols, J. Alvin Davis and J. F. Sapp, are the Registrars of Pierce County, Georgia. By amendment filed by the plaintiffs on September 22, 1956 after this case was closed the following parties were made additional plaintiffs:

Charles Smiley, Carrue Lue Smiley, Vernell Chancey, Henry Lee Nails, J. H. Washington, Joseph Smith, Nane Whitehead and Robert Askley and Idella Miles, Dan Brown, Rosa Lee Tyson Youman, Lillie Mae Douglas and Jesteen Surrency.

The petition was filed on August 11, 1956 and is for injunctive relief to prevent removal of the names of Negroes from the voting lists of Pierce County, Georgia. On the petition, the Court granted an order providing for a hearing on August 17, 1956, and commanding that until the hearing the defendants "cease and desist from considering any illegal challanges filed with them in connection with the names of Negroes in Pierce County, Georgia by J. C. Parker or any one else."

The temporary restraining order was prepared by attorney for plaintiffs. There were certain motions made by the defendants which the Court took under advisement until he rendered a final judgment in this case. Two amendments have been filed by the plaintiffs since this case was closed however, these two amendments are allowed for the purpose of filing and hearing of same over the objections of defendant's counsel, as hereinafter stated.

At the beginning of the hearing of August 17, 1956 and before the introduction of any evidence a motion was made by counsel for plaintiffs for continuance of the hearing without any statement about how long it was sought to have the hearing postponed. The continuance was requested because of the absence of a witness, namely, J. C. Parker, who signed challenges of the rights of plaintiffs and the other Negroes referred to in their petition to have their names entered on the voting list of Pierce County, Georgia. Plaintiffs' counsel stated that he wanted to prove that the witness "was not qualified to challenge these people's rights to vote". In connection with this statement he also said, "We do not know whether there was a J. C. Parker as a matter of fact. We want him here if there is such a man." He also stated, that he "had a subpoena issued for the witness". The subpoena was produced and had an entry thereon by the Deputy Marshal that it was received on August 14, 1956 and

that he endeavored to serve it. The Deputy Marshal testified that he went to Parker's home in Pierce County to serve him with the subpoena, that Parker while living in Pierce County, was working in Jacksonville, Florida during the week and returned to his home every week and in Pierce County, Georgia and that no money was furnished to him to pay Mr. Parker's per diem and expenses to come to Court as the law requires. Counsel for plaintiffs made no positive statement that he could show by Parker that he was not a citizen of Pierce County, Georgia, in fact, counsel for plaintiffs said "he did not know if there was such a man as J. C. Parker." Indeed, a colloquy between counsel for plaintiff and the Court indicated that he was not sure that he could prove by Parker that he was not a citizen of Pierce County, Georgia which colloquy was as follows:

"Attorney Scott: 'Well, just suppose, your Honor, that he is not a citizen.'

"The Court: 'Well have you proved that he is not a citizen?'

"Attorney Scott: 'Without the records of the Court, if he was brought here in Court we can ask him if he is a citizen of Pierce County. I think, on oath, he would be subject to punishment, if he is not a citizen.'

"The Court: 'Well, that up to you to prove that. Can you prove it?'

"Attorney Scott: 'I can't prove that this man is or is not a citizen when he is not here.' "

Although plaintiff had a number of proposed witnesses from Pierce County present he offered no evidence that J. C. Parker was not a resident of Pierce County, Georgia.

During the case on its merits, two long time residents of Patterson, Georgia, in Pierce County, namely, W. J. Ritch and Foster O'Quinn, testified that J. C. Parker was a resident of Patterson for four or five years and had built him a home there last year. It was also shown by another witness that Parker was a qualified voter of Pierce County, Georgia.

The showing made by plaintiffs did not entitle them to postponement of the hearing on account of the absence of the witness, J. C. Parker. To entitle one to a continuancy because of the absence of a witness, it must be shown that such continuance is reasonably necessary for a just determination of the cause, what the testimony of the absent witness will be, that it will be relevant to the issue involved and that the witness can probably be obtained if the continuance is granted, and that due diligence has been used to obtain his attendance at the hearing or trial. Neufield v. U. S., 73 App.D.C. 174, 118 F.2d 375(3); Zamora v. U. S., 9 Cir., 112 F.2d 631(2), 634 (2d Col) and 17 C.J.S., Continuances, §§ 48, 49, pp. 225, 226.

### Findings of Fact

On the hearing had on August 17, 1956 only three of the plaintiffs testified, namely I. J. White, F. J. Brown and David Collins. In their testimony White and Brown admitted that they had not been challenged and actually voted in the Democratic Primary held in Pierce County on August 7, 1956. This testimony was given by them despite the fact that the petition alleged that their names were stricken from the voting list of Pierce County and that White had signed the oath verifying the petition making such allegation, which he admitted when testifying on said hearing.

David Collins testified that he was present at the hearing had by the registrars on August 6, 1956 and that he received notice of it on Saturday before the hearing took place on the following Tuesday. He claimed to be a registered voter, but did not remember when he registered. He stated that it was some two or three years ago, and he did not remember whether he had voted since that time.

There was no testimony by David Collins that the registrars discriminated against him in any way. He did not testify that he had taken the oath required by law in order to register or that he possessed the requisite qualifications for registration, and he did not

testify that he was on the voters' list for 1954.

 It is a well settled rule of law that in the matter of asserting constitutional rights, only one who shows himself injured may complain, and that he can not champion others who do not choose to complain. Cook v. Davis, 5 Cir., 178 F.2d 585(1); 47 C.J. p. 51, sec. 100; 67 C.J.S., Parties, § 13(b), p. 920; 3 Moore, p. 3418, par. 23.04, and First National Bank of Shreveport v. Louisiana Tax Commission, 289 U.S. 60, 53 S.Ct. 511(4), 77 L.Ed. 1030 and 11 Am.Jur., p. 759, sec. 114.

It was not shown in the hearing on August 17, 1956 that any colored person who had registered except some of those who had been challenged was omitted from the voting list prepared by the Registrars for 1956. There was no definite evidence as to just how many were challenged and just how many of the challenges were sustained.

S. F. Memory, County Attorney, a lawyer of splendid character and state-wide reputation as an Attorney and Attorney for defendants testified that he had been practicing Attorney for fifty (50) years and that he gave plaintiffs a full hearing, and in most cases their petitions were granted. He testified "the Registrars were not technical about it, and I am quite sure that no man or woman was denied the right on account of race or previous condition of servitude. I am sure that didn't enter into it. The challenges were on the ground, well they speak for themselves, that they had not taken the oath required by law and did not possess the qualifications, that is, understanding the Constitution or the duties of citizenship that is required by law. That was the ground of the challenge and it was very specific."

Mr. Memory also testified that there were not more than 60 who requested a hearing on the challenges and that out of that number not more than 15 were left off the voting list, and that quite a number of them had not signed the voter's oath required by Georgia Law.

There was no evidence whatever that the registrars undertook to pass on the right to vote of any person who had registered except those who had been challenged. Not one iota of testimony showed that the registrars denied to any Negro challenged the right to vote because of his race, color or previous condition of servitude.

It was also shown by the testimony of said Foster Memory that a fair hearing was accorded to every one challenged who asked for it, that all notices required by the law were given and were mailed by him personally, and that in giving of such notices all the requirements of law were observed, except that the notice of hearing to one of the challenged, Emma Dugger, did not give the date and hour she would be heard, but it was shown that she appeared at the hearing and was heard by the registrars and her name allowed to remain on the voting list and that afterward she voted in a primary election held in said County.

### Conclusions of Law

The Challenger, J. C. Parker, is not a party to this case. There are no allegations in the petition or any evidence that would connect him with the defendants in the alleged acts as charged in the petition. A subpoena was issued for J. C. Parker but through negligence of the plaintiff's attorney he was not served. No valid reason was made for a continuance. This case is whether the defendants, Earl Echols, Alvin Davis, and J. A. Sapp performed their duties as Registrars as the law provides.

Section 34–132 of the 1955 Supplement to the Code provides that the registrars shall have the right and be charged with the duty of examining from time to time the qualifications of each elector whose name is entered upon the list of qualified voters, and shall not be limited or estopped by any action taken at any prior time. This section is taken from the Act of 1949, page 1221.

*Citizen and voter may challenge applicant for registration.*

Section 34–137 of the 1955 Supplement to the Code of Georgia provides that any citizen of the county who is registered and qualified voter shall be allowed to contest the right of registration of any person whose name appears upon the voters' list and for notice by the registrars to the voter. It also provides that the challenge shall specify the grounds upon which it is based, and copy of it shall be furnished to the challenged voter at least one day before passing upon same. This section is taken from the Act of 1949, Georgia Laws 1949, p. 1222.

*Consequence of failure to appear at time for hearing of challenge.*

Section 34–120, subd. 4, provides that failure to appear at the time specified in any notice under this section or in any notice given in connection with any hearing under this law shall constitute cause for dismissing an application or of removing a voter's name from the list and the registrars shall enter an order to that effect. It also provides that no new application for registration shall be received from the applicant until after the beginning of the next calendar year. It further provides that the application may be reinstated on motion of applicant if he can prove that he was not in fact served with such notice or furnished with a notice. This section was taken from the Act of 1949, Georgia Laws 1949, p. 1211.

*Notice of denial of application to registrar.*

Section 34–120, subd. 5, provides that when an order is entered denying an application or removing a voter's name from the voter's list notice shall be given to the applicant by mail on the day the order is issued at the address shown on the registration card. This section was taken from Section 20, subd. 5, of the Act of 1949, Georgia Laws 1949, p. 1212.

*Time for service of notices to be given by Registrars.*

Section 34–120, subd. 3, of the 1955 Supplement to the Code provides the time in which notices shall be served, that is not less than one day nor more than ten days after the date of the notice, and that they shall be mailed to applicant at the address given on his application card. It also provides that if the registrars are present when the application is filed, they may proceed with the examination of the applicant without notice.

The motions filed by the defendant were:

1. A motion for more definite statement of Plaintiff's petition.

2. A motion to strike I. J. White, F. J. Brown, Emma Dugger, Nancy Boyer and Pete Jones on account of the fact that they were not stricken by defendants, as Registrars of Pierce County, Georgia from the voting list of Pierce County as claimed by plaintiffs in their petition, but remained and now are on said voting list, and said plaintiffs, I. J. White, F. J. Brown, Emma Dugger actually voted in the Democratic Primary held in Pierce County, Georgia on August 15, 1956.

3. Motion to strike parts of complaint for the reason that the One Hundred Thirty-six (136) fellow Negro citizens whose interest herein being in common and similar to their own should be stricken and also that the plaintiff had not exhausted his remedies at law.

These motions are granted for the purpose of filing and hearing of same, and are granted.

The plaintiff filed amendments:
1. Motion to add names to the voting list as parties plaintiff after the case was closed. This motion was granted.

2. A motion that the laws under which the defendants were relying was unconstitutional being Act of Legislature approved February 25, 1949.

There was not any evidence or law submitted which would justify the Court in ruling that the Act of the Legislature approved February 25, 1949 is unconstitutional. This motion is therefore denied.

Judgment of the Court

Whereupon after carefully considering all the evidence offered in the hearing of the petition for injunction and applying thereto the principles of law which in the opinion of the court controls,

It is ordered, and adjudged by the Court that the prayers of plaintiffs for an injunction, as set forth in their petition be and the same is hereby refused and denied, and that the restraining order heretofore granted be and the same is hereby dissolved.