LANDRY, Judge.
Petitioners Broadmoor Apartments, Inc. (Broadmoor), Sherwood Park Apartments, Inc. (Sherwood) and Regency Apartments, Inc. (Regency), sometimes hereinafter referred to as Appellants, appeal from judgment of the trial court sustaining a decision of the Board of Tax Appeal assessing Appellants for corporate franchise taxes for the taxable years 1969,1970, and 1971. We affirm.
The sole question involved on appeal is whether funds borrowed by a corporation acting as agent are borrowed funds within the purview of La.R.S. 47:601 and 603 and therefore to be considered in determining the amount of corporate franchise taxes due by the borrower.
There is no dispute regarding the operative facts. In or about 1965 or 1966, a group of individuals (Owners) became interested in acquiring and developing tracts of commercial properties in the Baton Rouge, Louisiana area. To facilitate financing and to provide a consistent managerial program for the proposed endeavors, Owners opted to create three corporations to act for and represent Owners in the acquisition, development and management of the contemplated projects. Consequently, Appellants were formed between February 1966 and December 1968.
Concomitant with the incorporation of Broadmoor and Sherwood, Owners entered into a separate Nominee Agreement with each corporation. A similar Nominee Agreement was confected with Regency in March 1970. The Nominee Agreements, in reality counter letters, appointed each corporation as Owners’ agent, to hold, for Owners, title to designated properties and to administer same pursuant to Owners’ specific written authorization and instructions. The properties to be acquired by each corporation were described in exhibits attached to the respective agreements. Notwithstanding the agreement dealt with the title and ownership of real property, none of the Nominee Agreements were filed for public record.
In essence, each agreement contains the following pertinent provisions: (1) The agreement constitutes evidence of Owners’ beneficial ownership of the properties involved; (2) Owners designated two agents, Donald A. Hayden and Rolfe H. McCollis-ter, as a committee to represent Owners, which committee was duly authorized to direct the corporation’s conduct of Owners’ affairs, including the power to instruct the corporation regarding the acquisition, alienation and use of Owners’ properties; (3) Appellants were required to remit to Owners, immediately upon receipt, all rentals or proceeds from the use or sale of Owners’ properties; (4) Owners agreed to pay Appellants’ actual costs incurred in rendering services to Owners and also to indemnify Appellants, their officers and directors against any loss or liability resulting from any claim arising from Appellants’ activities pursuant to and in accordance with the Nominee Agreement; (5) Owners promised to pay their pro-rata share of the purchase price of properties together with interest and such other acquisition costs and expenses as might be incurred by Appellants *334 in obtaining property and holding same for Owners’ account; (6) Owners agreed to hold the properties in indivisión, each individual owner holding a share of ownership as shown on schedules attached to each Nominee Agreement.
In due time, Appellants were expressly instructed by Owners’ agents to acquire, hypothecate and develop the properties referred to in the respective Nominee Agreements. The instructions included obtaining financing for and the construction of rental apartments on portions of the properties. Pursuant to such directions, Appellants each acquired designated tracts of land in their own names, by cash sales in two instances and by sale with mortgage in the remaining case. Purchase money required for the acquisitions was provided by Owners from their own personal funds, which Owners either had on hand or borrowed as the occasion demanded. All such acquisitions were duly recorded in the public records of East Baton Rouge Parish.
In compliance with Owners’ instructions, Appellants executed several mortgages on the properties, for both interim and permanent financing. At least two of such mortgages were hypothecations which expressly exempted the mortgagor from personal liability for the debt involved. As additional security for loans to Appellants, several Owners executed continuing guarantees for Appellants’ debts, which instruments rendered Owners solidarily liable for the obligations.
Appellants filed with the Collector of Revenue, State of Louisiana (Collector), Corporate Income and Franchise Tax Returns for each of the years in question. Said returns each reflect income, expenses and a balance sheet for the periods concerned. The returns also show that each Appellant paid a franchise tax of $10.00 annually, but that each paid no income tax whatsoever. The respective Owners of each project have filed partnership returns for each of these same years. Admittedly, these income tax returns include a full reporting of all income, expenses and other relevant data regarding the several projects and also indicate Owners’ distributive shares of the profits and losses from the construction, operation and maintenance thereof. Collector concedes that all such partnership returns are true and correct insofar as concerns the legal issues and principles involved in this action.
For the years in question, Collector assessed Appellants’ corporate franchise taxes on the assumption that the mortgages outstanding in Appellants’ names on the public record represent borrowed capital of the corporations, notwithstanding the properties thusly acquired in Appellants’ names were in truth and in fact purchased for the benefit of Owners. In so doing, the Collector relied upon La.R.S. 47:601 and 603, which pertinently provide:

“§ 601. Imposition of tax

Every domestic corporation and every foreign corporation, exercising its charter, or qualified to do business or actually doing business in this state, or owning or using any part or all of its capital, plant or any other property in this state, subject to compliance with all other provisions of law, except as otherwise provided for in this Chapter shall pay an annual tax at the rate of $1.50 for each $1,000.00, or major fraction thereof on the amount of its capital stock, surplus, undivided profits, and borrowed capital, determined as hereinafter provided; the minimum tax shall not be less than $10.00 per year in any case. The tax levied herein is due and payable on any one or all of the following alternative incidents:
(1) The qualification to carry on or do business in this state or the actual doing of business within this state in a corporate form. The term “doing business” as used herein shall mean and include each and every act, power, right, privilege, or immunity exercised or enjoyed in this state, as an incident to or by virtue of the powers and privileges acquired by the nature of such organizations, as well as, the buying, selling or procuring of services or property.
*335 (2) The exercising of a corporation’s charter or the continuance of its charter within this state.
(3) The owning or using any part or all of its capital, plant or other property in this state in a corporate capacity.
It being the purpose of this section to require the payment of this tax to the State of Louisiana by domestic corporations for the right granted by the laws of this state to exist as such an organization, and by both domestic and foreign corporations for the enjoyment, under the protection of the laws of this state, of the powers, rights, privileges and immunities derived by reason of the corporate form of existence and operation. The tax hereby imposed shall be in addition to all other taxes levied by any other statute. “§ 608. Borrowed capital
As used in this Chapter, ‘borrowed capital’ means all indebtedness of a corporation, subject to the provisions of this Chapter, maturing more than one year from the date incurred, or which is not paid within one year from the date incurred regardless of maturity date. As to any indebtedness which is extended, renewed or re-financed, the date such indebtedness was originally incurred or contracted shall be considered for the purpose of this definition the date incurred or contracted. . .
Collector maintains he is entitled to rely upon the indicia of ownership disclosed by the public records which reveal Appellants as owners of the properties involved. Collector also contends the unrecorded Nominee Agreements or counter letters are of no effect against him as a third party relying upon the face of the public records.
Conversely, Owners contend that the Nominee Agreements are in effect counter letters which establish Owners’ equitable title to the properties involved as well as Owners’ obligation for the mortgage indebtedness involved. It is Owners’ position that Appellants acted merely as Owners’ agents; consequently, Appellants could not and did not acquire either an equitable interest in the properties concerned or any personal obligation to repay the borrowed funds.
The trial court rendered judgment for the Collector on the grounds that Appellants did not establish their alleged agency status and, alternatively, that even if Appellants were agents, they were undisclosed agents equally liable with Owners for the mortgage indebtednesses upon which each corporate franchise tax was computed. We agree with the result reached by the trial court, but for different reasons.
The stated purpose of the applicable statute, La.R.S. 47:601 et seq., is to require corporations to pay for the right to exist in corporate form and to take advantage of and exercise the rights, powers, privileges and immunities of corporate existence. The tax involved herein is assessable upon a corporation’s qualifying to do business or actually doing business in the state. It is determined, in part, by the amount of borrowed capital employed by a corporation in the conduct of its corporate affairs.
The term borrowed capital, as used in the statute in question, has been interpreted by the Supreme Court in State v. Union Bldg. Corporation, 185 La. 598, 170 So. 7, as follows:
“Manifestly the Legislature intended that the total amount of all capital made use of by a domestic corporation in the conduct of its business should be used as a basis for computing the franchise or license tax. In arriving at the total amount of capital used the following items are considered: First, the capital stock; second, the surplus, if any; third, undivided profits, if any; and, fourth, borrowed capital, if any. (3) What the act means by saying that “if the capital used or invested in the business or enterprise of such corporations includes borrowed capital, in excess of the capital stock, surplus and undivided profits, such excess or” (of) “borrowed capital shall be added,” etc., is that, if the corporation uses in the conduct of its business any borrowed or additional capital, that is, *336 capital beside that which was contributed by the stockholders in the purchase of the stock, and the earnings of the corporation, this borrowed or additional capital must be added to the other capital in order to form a basis for computing the tax. The amount of the tax is computed upon the amount of capital used, and, if the corporation uses more capital than it owns, it must pay the tax not only on that which it owns but also on that which it does not own, that which it borrows and puts into the business. The sum total is the amount of “capital used or invested in the business or enterprise of such corporation,” and forms the basis for “computing the franchise tax.”
Recently, in HEP Development Corporation v. Mouton, 256 So.2d 744, this court applied the rule announced in State v. Union Bldg. Corporation, above, and noted that:
“We understand the foregoing language in Union Building, above, to mean that for purposes of the tax in question that if a corporation makes use in its business of any borrowed or additional capital, aside from that which was contributed by its stockholders in the purchase of stock, and corporate earnings, such borrowed or additional capital must be considered in computing the tax in question.”
Article 2 of the charters of each Appellant corporation provides that the objects and purposes for which the corporation was created are, among other things, as follows:
“To take, lease, rent, hire, purchase or otherwise acquire and to own, use, hold, sell, convey, lease, mortgage, improve, develop and otherwise handle, deal in, promote, sub-divide, plan or dispose of, real estate, real property, and any interest or right therein.”
 Although the respective articles of incorporation do not expressly authorize Appellants to conduct their authorized activities as agents, we find the articles sufficiently broad to encompass Appellants’ acting in a representative capacity.
The record establishes conclusively that Appellants were in fact acting as Owners’ agents in the transactions involved herein. The Nominee Agreements or counter letters expressly provide that Appellants have no authority to take any action, sign any documents, or make any decisions affecting Owners’ property without Owners’ express written consent, authorization and direction. In each instance involved, Owners’ presented Appellants with written instructions for carrying out the acquisition and development of Owners’ properties. Without exception the instructions specifically recite that Appellants are to act solely as Owners’ agent in carrying out the mandate.
State v. Union Bldg. Corporation, above, clearly declares the legislative intent to be that the total amount of all capital made use of by a domestic corporation in the conduct of its business, is to be considered in determining the amount of borrowed capital for purposes of determining corporate franchise taxes due pursuant to La. R.S. 47:601 and 603.
Despite the agency relationship shown in this instance, we find the principles announced in State v. Union Bldg. Corporation, above to be applicable and controlling herein. We so hold because the intent of the pertinent statute has been held to be that funds borrowed for the exercise, use, enjoyment or performance of a corporate purpose, are to be considered in determining the amount of corporation franchise taxes due pursuant to La.R.S. 47:601 and 603. The legislative intent is to include in the term borrowed funds all sums borrowed by a corporation in the conduct of its business as a corporation. The tax is upon the corporate right to function in a corporate capacity, whether for the account of the corporation or as corporate agent for a third party. A corporation acting as agent for another party is nonetheless acting as a corporation and as such enjoying, exercising and utilizing the rights, privileges and immunities of a corporation under law. Appellants in this instance were all performing a function for which they were *337 incorporated; that is, the purchase, mortgage and development of real property. It follows that the funds borrowed in the corporate name to achieve such purposes, were borrowed funds within the ambit of La.R.S. 47:601 and 603.
The judgment of the trial court is affirmed, all costs to be paid by Appellants.
Affirmed.