O’NIELL, Chief Justice.
 

 This is a suit for additional corporation franchise taxes for the years 1934 to 1938, inclusive. The defendant pleaded that the claim for the tax for the year 1934 was barred by the prescription of three years, under Section 19 of' Article XIX of the Constitution, as amended according to Act No. 35 of 1938, at the Congressional election held on November 8, 1938. The defendant pleaded also that the statute under which the State is claiming the additional franchise taxes, specifically, the 4th paragraph of Section 1 of Act No. 8 of 1932, as amended by Act No. 18 of 1934, Act No. 25 of the First Extra Session of 1934, and Act No. 10 of the First Extra Session of 1935, is violative of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States, in that the statute discriminates arbitrarily against corporations having borrowed capital in excess of their capital stock, surplus and undivided profits, and in favor of corporations which do
 
 not
 
 have borrowed capital in excess of their capital stock, surplus and undivided profits. Answering the suit the defendant pleaded that
 
 *745
 
 it had paid promptly all of the franchise ■taxes for the years 1934 to 1938, inclusive. The defendant averred that it suffered a loss of $99,950.87 in the year 1929 and suffered additional losses in each subsequent year up to and including the year 1938, except that in the year 1934 the defendant made a comparatively small profit, $690.42. It is contended by the defendant that these losses should be deducted from the amount of its capital. The only question therefore on the merits of the State’s claim is whether these losses should be deducted from the amount of the defendant’s capital stock, there being
 
 no
 
 surplus or undivided profits. The judge of the civil district court overruled the plea of prescription and the plea that the act was unconstitutional, and gave judgment for the additional franchise taxes, with accrued interest and penalties, claimed by the State. The defendant is appealing from the decision.
 

 Considering first the question of constitutionality of the 4th paragraph of Section 1 of Act No. 8 of 1932 as amended, it is not necessary to determine now whether the discrimination complained of should be considered arbitrary if in fact the statute makes the discrimination, by adding to the capital stock, surplus and undivided profits the amount only which the borrowed capital exceeds that sum. We decided in the case of State v. Union Building Corporation, 185 La. 598, 170 So. 7, that the correct interpretation of the 4th paragraph of Section 1 of Act No. 8 of 1932, as amended, is that if the corporation uses in the conduct of its business any borrowed or additional capital, that is;any capital besides that which was contributed by the stockholders in the purchase of shares of capital stock, and in addition to the earnings of the corporation, then the entire amount' of this ' borrowed or additional capital must be added to the amount of the capital stock, surplus and undivided profits, in order to determine the amount on which the tax is to be computed. In the case of State v. Xeter Realty, Limited, 182 La. 414, 162 So. 29, the State claimed only that the excess of borrowed capital, over and above the amount of the capital stock, surplus and undivided profits, should be added to the amount of the capital stock, surplus and undivided profits, in order to determine the amount on which the tax should be computed. In that case it made very little difference whether the statute should be construed so as to add the entire amount of the borrowed capital to the capital stock, surplus and undivided profits, or so as to add only the excess of the borrowed capital, over and above the amount of the capital stock, surplus and undivided profits; because in that case the capital stock amounted only to $3,200 and the past-due indebtedness, which was treated as borrowed capital, amounted to $110,-000. The court therefore did not decide or have occasion to decide in the Xeter Realty case the question that came up afterwards in the Union Building Corporation’s case, concerning the meaning of the 4th paragraph of Section 1 of Act No. 8 of 1932. It is obvious that if the statute should be construed so as to add to the amount of the capital stock, surplus and undivided profits only the excess of borrowed capital over and above the amount
 
 *747
 
 of the capital stock, surplus and undivided profits, in determining the amount on which the tax should be computed, the result would be to compute the tax only on the amount of the borrowed capital if that amount exceeded the amount of the capital stock, surplus and undivided profits.' Therefore, in State v. Union Building Corporation, 185 La. pp. 613, 614, 170 So. p. 12, it was observed:
 

 “If this interpretation be correct, it is readily seen that the act is discriminatory, in that the tax levied might be unequal on corporations of the same class engaged in the same kind of business.
 

 “But this interpretation of the act is not correct. Manifestly the Legislature intended that the total amount of all capital made use of by a domestic corporation in the conduct of its business. should be used as a basis for computing the franchise or license tax. In arriving at the total amount of capital used the following items are considered: First, the capital stock; second, the surplus, if any; third, undivided profits, if any; and, fourth, borrowed capital, if any.”
 

 The defendant’s plea that the statute is unconstitutional, therefore, is not well founded.
 

 It is true that the defendant corporation suffered a loss of $99,950.87 in its business operations in the year 1929, and thereafter suffered a loss every year up to 1938, except that in the year 1934 the corporation made a profit of $690.42. These losses, however, were charged.to the personal account of the principal stockholder, S. M. Mayer, and were actually paid by him; so that, in truth, the corporation did. not suffer the loss. For that reason the Department of Revenue dealt with the indebtedness due to Mayer as borrowed capital. The judge of the civil district court sustained the holding of the Department of' Revenue that in truth the payment of the losses by Mayer prevented an impairment of the capital used in the conduct of the business of the corporation. In the case-of State v. Union Building Corporation, which we have referred to, the defendant contended that a mortgage debt amounting; to $1,500,000 which the corporation had assumed in buying an office building for that price was not borrowed capital. But. this court held otherwise, saying: “This argument, we think, is without merit. The-only asset the defendant corporation has. is the office building which it operates. Presumably, the building is worth what the-defendant agreed to pay for it, which was; $1,500,000. It was purchased by • defendant without the immediate- expenditure of' any sum whatever.. The purchase price-was paid by the assumption of the .indebtedness, which in principle is the same as. if the corporation had borrowed the-amount, paid the price with the proceeds, of the loan, and then secured the loan by mortgage on the property. The capital invested by the defendant in its business is. the price of the building, and it matters, not whether that capital was obtained by-assuming the indebtedness or whether it was literally borrowed and put into the-business. The result is the same. To hold, ■otherwise would thwart the purpose of the act.”
 

 
 *749
 
 That decision is analogous to the ruling ■of the judge of .the civil district court in this case, that the losses which otherwise would have been sustained by the corporation, but which were charged to and paid by the principal stockholder, were not losses of the corporation, or that the charging ■of the losses to the principal stockholder and the payment thereof by him should be ■dealt with as the borrowing of capital for the operation of the business of the corporation.
 

 The term “borrowed capital” is defined in subsection (2) of Section 1 of Act No. 160 of 1942, amending Section 1 of Act No. 10 of the First Extra Session of 1935, thus: “As used in this act the term ‘borrowed capital’ means all indebtedness or liabilities of a corporation maturing six months or more from date incurred or contracted, or which have not been paid within six months from date incurred or contracted, regardless of maturity date; provided, that as to any indebtedness or liability which may be extended or renewed, the date such indebtedness or liability was originally incurred or contracted shall be considered,'for the purpose of this definition of ‘borrowed capital’ the date incurred or contracted; provided, further, that all liabilities or indebtedness to a parent by a subsidiary corporation, or to a subsidiary by a parent corporation will be ‘borrowed capital’ of said debtor corporation, exclusive (1) of past due and unpaid interest accruing after the approval or allowance by the Court of a petition for a receivership, bankruptcy or reorganization under the bankruptcy law and (2) excluding any indebtedness or liabilities maturing within six months or more from date contracted or which is paid within six months from date incurred or contracted by a receiver or trustee in any such court proceeding.”
 

 The Act of 1942 was not in effect when this suit was filed, or even when the record was filed in this court. But the definition of “borrowed capital” given in the Act of 1942 does not conflict with the ruling in State v. Union Building Corporation that the mortgage debt of $1,500,000 assumed by the corporation should be dealt with as “borrowed capital”, or with the ruling made in this case that the losses which were charged to the stockholder, S. M. Meyer, and which were paid by him, should be dealt with as “borrowed capital”, or as preventing a reduction of the capital employed by the corporation in operating its business.
 

 The judge was right also in overruling the plea of prescription of three years against the franchise tax claimed for the year 1934. It is true that, according to the amendment of Section 19 of Article XIX of the Constitution pursuant to Act No. 35 of 1938, the period of prescription was reckoned from the 31st day of December of the year in which the franchise tax was due, that is, from the 31st day of December, 1934; ' but the constitutional amendment, which provided for the prescription of three years, did not go into effect until the end of the 9th day or the beginning of the 10th day of December 1938. The Governor issued his proclamation on November 19, 1938, proclaiming that the amendment had been adopted. Ac
 
 *751
 
 cording to Section 1 of Article XXI of the Constitution the amendment became effective as a part of the Constitution 20 days after the issuance of the Governor’s proclamation. The twentieth day after the 19th day of November is the 9th day of December; hence the amendment which created the prescription of three years became effective immediately at the expiration of the 9th day, or say at the beginning of the 10th day, of December 1938. This suit was filed on the 5th day of December 1938, which was five days before the constitutional amendment went into effect. That point was decided in State v. Alden Mills, 202 La. 416, 12 So.2d 204, where the State filed suit on December 8, 1941, for additional corporation franchise taxes for the years 1933, 1934, 1935, 1936 and 1937; and the defendant pleaded that the claim for additional taxes was barred by the prescription of three years under Section 19 of Article XIX of the Constitution as amended pursuant to Act No. 35 of 1938. Referring to the claim for additional taxes for 1933 and 1934 (loc. cit. 202 La. pp. 438, 439, 12 So.2d p. 211), the court said: “The attorneys for the Collector of Revenue contend that the day on which the suit was filed — which was the 8th day of December 1941 — was the last day — or was the day next to the last day — before the claim otherwise would have become barred by the prescription of three years— even for the additional taxes claimed for the year 1933. But our opinion is that the claim for the additional taxes for the years 1933 and 1934 became barred by the prescription of three years on the day on which this constitutional amendment became effective — which was the 9th or 10th day of December 1938, — and that the claims for additional taxes for the years-1935, 1936 and
 
 1937
 
 became barred by the prescription of three years at the- end of December 1938, 1939 and 1940, respectively.”
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed.