LANIER, Judge.
This is an appeal from a decision of the State Civil Service Commission (Commission) which affirmed the action of the Department of Public Safety, Office of State Police, terminating a classified employee.
FACTS
On January 7, 1983, at approximately 1:15 a.m., Sergeant Robert Rarick of the Baton Rouge Police Department received a complaint that Bennie J. Hughes had cut the left front tire of an automobile owned by Jimmie D. York. At the time of this incident, Hughes was employed as a Trooper First Class with the Department of Public Safety, Office of State Police, and served in the detective division where he worked undercover. At approximately 9:00 a.m. on January 7, 1983, Donna York, the daughter of Jimmie D. York, filed a complaint concerning the incident with Senior Trooper Terry Mayeux of the Louisiana State Police Internal Affairs Office. At approximately 2:00 p.m. on January 7, 1983, Hughes was interrogated by Trooper Mayeux and Sergeant Charlie Sheldon concerning these allegations.
On January 11,1983, Hughes was verbally suspended by his supervisor, Lieutenant Gary W. McDonald. By letter dated January 24, 1983, Hughes was notified by Grover W. Garrison, the Deputy Secretary of the Department of Public Safety and head of the Office of State Police (Agency), that he was terminated effective at the close of business on January 25, 1983. The following reasons were given for the termination:
(1) slashing the tire of the York vehicle;
(2) failing to cooperate fully with the Internal Affairs investigation; and
*622 (3) going to a bar in his police vehicle after going off duty.
Hughes appealed the Agency action of termination to the Commission. After a hearing, the Commission found that the Agency properly proved the slashing of the tire and the failure to cooperate but failed to prove improper use of the police vehicle and upheld the termination.[1] Hughes timely appealed the Commission decision to this court.
TIRE SLASHING INCIDENT
(Specifications of Error 1, 2, 3, 5 and 8)
On appeal, Hughes contends that the Commission erred in concluding that legal cause existed for disciplinary action, by accepting the conflicting testimony of convicted felons over that of a police officer, in failing to realize that motivation for fabricating charges existed because Hughes intended to jail Jimmie York for drug trafficking, in finding Hughes cut the left front tire of the York vehicle and in refusing to require the State to bear the burden of proof.
Jimmie D. York testified that on January 6, 1983, he returned from a Willie Nelson concert to his home at Apartment 48, 1737 LaAnnie Drive in Baton Rouge, Louisiana. York had recently moved to Apartment 48 from Apartment 52 in the same building. York lived in the apartment with his girlfriend, Arlene Gordon, and his twenty-two year old daughter, Donna York. Arlene Gordon had accompanied York to the concert, and Donna York had remained in the apartment. York watched television for a while and then went to bed with Gordon. At approximately 1:00 a.m. on January 7, 1983, Gordon went to the bedroom window and, while standing there, observed Bennie Hughes in the parking lot below by York’s vehicle. Gordon called to York who went to the window and also saw Hughes. York then got his daughter, Donna, to also come and observe Hughes. York observed Hughes kneel down by his left front tire and then heard a sound like air escaping. York yelled to Hughes and Hughes left. York told his daughter to go to Apartment 52 where the phone was still connected and report the incident to the police. Donna York left and subsequently returned with a note addressed to Arlene Gordon from Hughes which she found attached to the door of Apartment 52. This note read as follows: “Boo! You really need to go to lunch one day & hear what needs to be said. For Nicki (‘saik’) if for no other reason u-no-who”. York admitted he was convicted of burglary when he was seventeen and was sentenced to six years in Angola and was convicted for fighting in a barroom.[2]
Arlene Gordon was called to testify and generally corroborated the testimony of York. She further testified that Hughes had left notes for her before and that York’s tires had been cut on other occasions. She specifically testified that she saw Hughes squat by the left front tire of York’s car, heard a sound like air being let out of a balloon and saw the car start sinking. She saw something in Hughes’ hand but could not identify it as a knife. She admitted that she had been convicted of distribution of methamphetamines in 1976 for which she got probation and had been convicted of driving while intoxicated.[3]
Bennie J. Hughes testified that on January 6, 1983, he left Baton Rouge, Louisiana, with Detective Stephen Bourgoyne of the Louisiana State Police to do undercover investigations in Assumption and Ascension Parishes to see if there were juveniles, prostitution or gambling in various bars. Hughes returned to Baton Rouge prior to *623 1:00 a.m. on January 7, 1983, and proceeded to Apartment 52 at 1737 LaAnnie Drive. Hughes left the note for Arlene Gordon and left. Hughes denied cutting the tire of the York vehicle. Hughes acknowledged that he knew York prior to this incident, that he had York under investigation and that he had tried to get York on a cocaine deal in September of 1982.
Decisions of the Commission are subject to review by this court on any question of law or fact. La. Const. of 1974, art. X, § 12. The standard of review in appeals from the Commission is the same as the standard used in reviewing decisions of the district courts, and factual determinations of the Commission will not be set aside unless they are shown to be manifestly erroneous (clearly wrong). Thomas v. Department of Corrections, Office of Probation and Parole, 442 So.2d 554 (La.App. 1st Cir.1983). The appointing authority (Agency) in a disciplinary proceeding bears the burden of proving the facts contained in its allegations by a preponderance of the evidence. La. Const. of 1974, art. X, § 8(A); Jones v. Dept. of Health & Human Resources, 430 So.2d 1203 (La.App. 1st Cir.1983).
We have carefully reviewed the transcript of the Commission’s proceedings and find that its factual determinations on this allegation are not clearly wrong. These specifications of error are without merit.
FAILURE TO COOPERATE
(Specifications of Error 1, 6 and 8)
Hughes contends that the Commission erred in concluding that he refused to cooperate with the Internal Affairs investigation, that this was not a legal cause for disciplinary action and that the Commission refused to require the Agency to bear the burden of proof.
Sergeant Charlie Sheldon testified that he assisted in the interrogation of Hughes on January 7, 1983. Sheldon asked Hughes whether he was at the LaAnnie Drive apartment on January 6 or 7, and Hughes responded “No” that he was nowhere near the place. Hughes was questioned further and was then confronted with the note that had been left on the door of Apartment 52. Hughes then responded that he could have been at the apartment at that time but was not sure.
Trooper Terry Mayeux testified that he and Sergeant Sheldon interrogated Hughes on January 7, 1983. Sergeant Sheldon asked Hughes where he was and what he had done that night, and in a roundabout way, Hughes said he left the Region, he went by the Outpost (a lounge) and then went home. Sheldon asked Hughes if he went by York’s apartment, and Hughes said “No”. Subsequently, the officers confronted Hughes with the note, and Hughes admitted that he could have gone by there but did not really know. After further interrogation, Hughes admitted he went by the apartment.
Hughes acknowledged that he was interrogated by Sheldon and Mayeux. When asked what he did the previous night, Hughes told them that he went to Napole-onville to work undercover with Trooper Bourgoyne, returned to Regional Headquarters (in Baton Rouge) and dropped Bourgoyne off, went to the Outpost Lounge for a few minutes and then went home. Hughes did not deny going by Apartment 52 but did not include that fact in his initial statement because he was only giving a general answer. When he was asked about the note, he freely and openly admitted that he went by the apartment and left the note for Arlene Gordon. Hughes stated that he would have been a fool to deny the note because he did in fact leave it, that he did in fact go to the apartment and that the note was in his handwriting. As a trained investigator, he knew that the note could be run through the State Police Crime Lab to get fingerprints and for analysis.
We have carefully reviewed the transcript of the Commission’s proceedings, and we cannot determine that its factual findings are clearly wrong. These specifications of error are without merit.
*624 EVIDENCE OF HUGHES’ SEXUAL RELATIONSHIP WITH ARLENE GORDON
(Specification of Error 4)
Hughes contends that the Commission committed error by considering evidence and giving weight to his sexual relationship with Arlene Gordon.
During cross-examination of York, counsel for Hughes elicited the following information:
Q Why would Bennie Hughes have been cutting your tires?
A Well, I was going with his — Arlene, that girl was his girlfriend, and he—
Q I’m sorry, I can’t hear you.
A Called the girl I’m going with now. He was going with her at the time, I suppose, you know. And I guess he was in love. I don’t know what his problem was.
The apparent purpose of this line of questioning was to attempt to establish that Hughes had no motive for cutting York’s tire. However, this testimony indicates that Hughes may have cut the tire because York was going with his ex-girlfriend. Subsequently, counsel for the Agency on direct examination of Arlene Gordon established without objection that Hughes met her in March of 1982 when Hughes arrested her and that commencing in April of 1982, Gordon and Hughes had an intimate relationship, although she did not live with him. Counsel for the Agency then asked Gordon how long the relationship existed, and counsel for Hughes objected contending that any evidence about the relationship would be outside of the scope of the letter of termination. The Commission chairman overruled the objection because there was previous testimony relating to the relationship and because it did not expand the charges. Gordon then testified that the relationship lasted from April of 1982 until September of 1982 when she stopped going with Hughes and started going with York. There is other evidence in the record to show that Gordon started going with York while Hughes was away on a hunting trip. Subsequently, on examination by Commission members and without objection, Gordon testified that she had sex with Hughes almost every day during a six month period. Terry Mayeux testified without objection that Hughes told him that he had gone with Gordon for several months, that they had been intimate, that they had since broken up, that Hughes’ wife was aware of the entire matter and that Hughes and his wife had reconciled.
The Commission is vested with broad rulemaking powers for regulation of the classified service. La. Const. of 1974, art. X, § 10(A). This constitutional grant of rulemaking power precludes the legislature from enacting a statute which would nullify a rule of the Commission. Smith v. Department of Health and Human Resources, 416 So.2d 94 (La.1982). Pursuant to Rule 13.19(d) and (k), the rules of evidence and procedure in hearings before the Commission shall be the same as those applicable to civil trials in district courts.
Much of the testimony concerning the relationship between Hughes and Gordon came in response to questions which were not objected to by Hughes. The failure to object to these questions constituted a waiver of the right to complain of the answers given on appeal. La.C.C.P. art. 1635; Circello v. Government Employees Insurance Company, 425 So.2d 239 (La.App. 1st Cir.1982), writ denied, 429 So.2d 145 (La.1983). In addition, evidence of the relationship between Hughes and Gordon and the fact that Gordon left Hughes to live with York is relevant evidence to establish a motive by Hughes for cutting York’s tire. Motive has been defined as the cause or reason that moves the will and induces action for a definite result. State v. Brown, 398 So.2d 1381 (La.1981); State v. Robertson, 441 So.2d 1281 (La.App. 1st Cir.1983), writ denied, 446 So.2d 314 (La.1984). Evidence of motive is material to show the state of mind when an act has been committed. State v. McHamilton, 128 La. 498, 54 So. 971 (1911). The evidence of the Hughes-Gordon relationship and the fact *625 that Gordon left Hughes for York is factually peculiar to the victim (York) and the charged offense (slashing York’s tire). Because testimony concerning the relationship did not concern a crime by Hughes, it cannot be excluded as improper other-crimes evidence. State v. Abercrombie, 375 So.2d 1170, 1176-1177 (La.1979).
The objection taken by Hughes to a portion of this testimony is not well founded, and this specification of error is without merit.
USE OF HUGHES’ TAPED INTERVIEW
(Specification of Error 7)
Hughes contends that the Commission erred in failing to realize that the tapes of the Internal Affairs investigation were the best evidence of the events concerning his failure to cooperate.
The best evidence of a tape recorded statement is the unaltered tape. State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983). Mayeux, Sheldon and Hughes testified without objection about the contents of the interrogation conducted on January 7, 1983. Their testimony also indicates that a portion of the interrogation was tape recorded and that these tapes were available at the Commission hearing. Neither Hughes nor the Agency requested or attempted to use these tapes. Counsel for Hughes conceded in oral argument that the reason he did not attempt to get or use the tapes was because there is no discovery in Civil Service proceedings and he did not know the contents of the tapes at the time of the hearing. Because Hughes did not object to the testimonies of Sheldon and Mayeux concerning the interrogation and did not attempt to obtain and/or use the tapes, he has waived any objections to this procedure and cannot raise this issue in this appeal. The argument by Hughes that it was the responsibility of the Agency to utilize the tapes even without objection from him is without merit.
DECREE
For the foregoing reasons, the rulings of the Commission are correct and are affirmed at the appellant’s costs.
AFFIRMED.

. Four members of the Commission joined in the decision, two dissented with reasons and the seventh did not participate.

. York also admitted to multiple arrests; however, this evidence is not relevant for impeachment purposes. La.R.S. 15:495.

.Gordon was also questioned concerning several arrests.