498 So.2d 181 (1986)
DEPARTMENT OF HEALTH & HUMAN RESOURCES, Belle Chasse State School
v.
Johnny PAYTON.
No. CA 85 0280.
Court of Appeal of Louisiana, First Circuit.
May 30, 1986.
On Rehearing October 28, 1986.
*182 Steven R. Giglio, Staff Atty., Dept. of Health & Human Resources, Office of Gen. Counsel, Baton Rouge, for first appellant.
Mary E. Howell, Howell and Bayer, New Orleans, for second appellant.
Robert R. Boland, Jr., Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for Herbert L. Sumrall.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
*183 JOHN S. COVINGTON, Judge.
Both the appointing authority and the former employee appealed the December 23, 1983 decision of the Louisiana Civil Service Commission, hereafter "Commission" which amended and affirmed the August 26, 1983 decision by the Appeals Referee to whom Payton's appeal was assigned "for hearing" by the Director of Civil Service, his appointment having been ratified by the Commission on February 2, 1982.
Johnny Payton, a full-time teacher in the public school system of Jefferson Parish, obtained a second full-time job, working after his school duties were concluded for the day, as a resident training aide (RTA) at Belle Chasse State School, a unit of the Louisiana Department of Health and Human Resources (DHHR). He worked from September 24, 1980 until he was dismissed on January 9, 1981. At the time he was dismissed Payton had not served the six months probational period.
Payton timely appealed his dismissal to the Commission, asserting he was dismissed "due to discrimination against him on the basis of his protected activities under the First Amendment to the U.S. Constitution, the Louisiana Constitution and as a union member and steward." The acts of alleged discrimination were stated with particularity in the remainder of the appeal letter prepared and signed by his attorney who is also his counsel in this court.
The Referee conducted evidentiary hearings on March 25 and September 27, 1982 and March 28, 1983; at the conclusion of the hearing on March 28, 1983 the Referee took the matter under advisement; the decision was rendered August 26, 1983.
In an extensive opinion Referee Pellegrin denied both DHHR's and Payton's request for summary disposition, articulated detailed "findings of fact" and "conclusions of law" and ordered Payton "reinstated to his position effective January 9, 1981 ... [with] back pay from that date until he actually returns to duty, subject to an offset in favor of ... [DHHR] for any wages earned since the date of termination." The order excluded from the offset "any wages earned by ... [Payton] in his position as a full-time teacher with the Jefferson Parish School System." The order further directed that "all reference to the termination is to be removed from [Payton's] personnel records."
DHHR requested the Commission to set aside the decision of the Referee, alleging the 1982 amendment to Article 10, § 12(A) of the Louisiana Constitution of 1974 authorizes or empowers referees to decide only those appeals lodged after the effective date of the amendment, October 15, 1982, and that the Commission's rules "implementing the Constitutional Amendment were not promulgated until after partial hearing was held." The Commission was asked to "set aside in its entirety" the Referee's decision and hold a de novo "full hearing of the appeal." Alternatively, DHHR requested the Commission to conduct a "review by the full Commission pursuant to [CSC] Rule 13.36," followed by an enumeration of alleged errors committed by the Referee.
Primarily, DHHR alleged, in its motion filed with the Commission, that the Referee erred, inter alia, (1) in concluding that Payton had been the victim of discrimination and the reasons stated in the dismissal letter did not "occur as charged" and were not the real reasons for the dismissal, (2) in excluding from the offset portion of the order Payton's earnings as a teacher, (3) in misstating the standard of proof in discrimination cases.
In the Commissions' decision, issued December 23, 1983, styled "Opinion on Application for Review," the preamble states that:
"This matter comes before us on Application for Review filed by the appointing authority following the decision of the Referee granting the appeal and reinstating appellant to his position as a Resident Training Aide."
followed immediately by the terse statement that:

*184 "We specifically adopt the statement of the appeal, the findings of fact, and the conclusions of law all as found in the opinion of the Referee filed on August 26, 1983."
However, the Commission modified the Referee's order only to the extent of "allow[ing] an offset in favor of the appointing authority against the amount that it must pay the appellant as back wages not only for any wages earned by the appellant during the period of unemployment as a result of the action of the appointing authority that has been overturned, but also an offset for any unemployment compensation received during this period." The opinion concluded with the sentence "In all other respects, the Application for Review is denied."

DISMISSAL LETTER
The dismissal letter, signed by Gene I. Barrow, the facility administrator, stated the reasons for the appointing authority's action as follows:
Your inappropriate behavior to an immediate supervisor that is disruptive to the work environment is unacceptable by this agency as proper conduct of a Resident Training Aide at Belle Chasse State School. Specially, your disruptive and inappropriate reaction to Mrs. Lydia Stewart, RTS III at approximately 8:00 p.m. on December 20, 1980 in Unit D-2, when she questioned you concerning the length of time you were spending on the units (sic) telephone, cannot be accepted by this agency as proper conduct of a Resident Training Aide. Your harsh attitude expressed toward BCSS Resident # 0814 at the time of the above-mentioned incident in Unit D-2 cannot be tolerated by this agency as one acceptable by any employee in your position of a Resident Training Aide who is responsible for the care and supervision of BCSS residents. Therefore, we find the disciplinary action to be both warranted and necessary and in the best interest of the agency.
(Parenthesis and emphasis supplied.)

ASSIGNMENTS OF ERROR
FIRST APPELLANT, DHHR
DHHR assigns as error
1. The Commission's allowing the Referee to decide the appeal;
2. The Commission's allowing the Referee to decide the appeal on the basis of the evidence, testimonial and documentary, adduced at the hearings presided over by the Referee and/or its failure to review the Referee's decision;
3. Affirming the Referee's finding that Payton proved discrimination was the motive for his dismissal;
4. Affirming the Referee's holding that the reasons stated in DHHR's dismissal letter were not the real reasons for Payton's dismissal;
5. The Commission's and/or Referee's applying unconstitutional rules of the commission and misapplying the civil service provisions of the Louisiana Constitution of 1974.
SECOND APPELLANT, PAYTON
Payton assigns as error
1. The Commission's allowance, as offset, unemployment benefits he received after his termination by DHHR;
2. The Commission's ambiguous statement which might be interpreted as allowing offset Payton's salary as a teacher in the Jefferson Parish School System.

ISSUES
1. Did the amendment to Article 10, Section 12(A) of the 1974 Constitution empower the referee to decide the appeal on the basis of discrimination or any other ground?
2. Were the referee's findings based on sufficient relevant and admissible evidence?
3. Are the Commission's rules implementing the 1982 amendment to Article 10, § 12(A) constitutional?
*185 4. Did the referee misapply the civil service provisions of the 1974 Constitution?
5. Did the Commission properly allow as an offset the unemployment benefits received by Payton after his termination?
6. Did the Commission's modification of the referee's decision include an offset for salary paid Payton as a public school teacher?

REFEREE'S AUTHORITY TO DECIDE APPEAL
Article 10, § 12(A) of the 1974 Constitution, as amended effective October 15, 1982, dealing with the State Civil Service Commission, states, in pertinent part that:
"... [The Commission] may appoint a referee, ... to take testimony, hear, and decide removal and disciplinary cases. The decision of a referee is subject to review by the commission on any question of law or fact ..." (Emphasis added.)
Before the 1982 amendment Section 12 language concerning referees simply authorized the commission to "appoint a referee to take testimony with subpoena power and power to administer oaths to witnesses." The 1982 amendment completely rewrote Section 12, as shown, in part by the excerpt above.
Constitutional amendments are effective twenty days after the governor proclaims their adoption, unless the amendment provides otherwise. La. Const. of 1974, art. XIII, § 1(C). Such amendments are not retrospective unless they say so. Cf., State v. Mayer Sugar & Molasses Co., 204 La. 742, 16 So.2d 251 (1943). When the referee was initially appointed by the Commission, under the terms of La. Const. of 1974, art. 10, § 12, she only had the power to issue subpoenas, administer oaths and take testimony. The decision making power was exclusively in the Commission. This constitutional provision was amended effective October 15, 1982, to authorize the Commission to delegate the decision making power to the referee. DHHR asserts the Commission did not reappoint the referee after the effective date of the constitutional amendment. This assertion is supported by the record; thus, the power to decide the case was never delegated by the Commission to the referee. The initial appointment could not constitutionally delegate such power, and the amendment is not retrospective in application. Thus, the referee acted ultra vires when she decided the case, and her decision is null and void.
First, second and fifth assignments of error of first appellant, DHHR, have merit. Therefore we do not address DHHR's third and fourth assignments of error or second appellant Payton's assignments of error.
For the foregoing reasons this matter is remanded to the Louisiana Civil Service Commission for decision on the record made by the referee. Costs of this appeal in the amount of $50.00 are taxed against DHHR; all other costs to await disposition before the Commission pursuant to Civil Service Rule 13.26.

REMANDED WITH INSTRUCTIONS.

ON REHEARING
PER CURIAM.
We reached the following conclusions on original hearing:
DHHR asserts the Commission did not reappoint the referee after the effective date of the constitutional amendment. This assertion is supported by the record; thus, the power to decide the case was never delegated by the Commission to the referee. The initial appointment could not constitutionally delegate such power, and the amendment is not retrospective in application. Thus, the referee acted ultra vires when she decided the case, and her decision is null and void.
Shortly after our decision was rendered, the Chief Referee for the Louisiana Civil Service Commission, hereafter "CSC", advised this court that the record upon which our decision was based "did not contain all of the pertinent minute entries." The Chief Referee asked that the record be supplemented with five sets of minutes of the CSC. The minutes of September 7 and *186 8, 1982, contain the following pertinent to the instant case:
On motion duly made, seconded and passed, the Commission assigned the following appeals to Civil Service Referees and specifically authorized Referees Donald J. Cicet, Laura D. Holmes and Bernice R. Pellegrin to render decisions therein in the event that the constitution is amended to allow referees to be given decisional authority.... Johnny Payton, (DHHR, Belle Chasse State School) 2726...
The minutes of December 7 and 8, 1982, have the following pertinent to the instant case:
On motion duly made, seconded and passed, the Commission voted to assign the following appeals to Civil Service Referees and specifically authorized Referees Donald J. Cicet, Norman W. Ershler, Laura D. Holmes and Bernice Pellegrin to render decisions therein: ... Johnny Payton, (DHHR, Belle Chasse State School 2726 ...
It is well settled law that the inadequacy of a record is imputable to the appellant (DHHR herein). Ronald Adams, Contractor, Inc. v. State, 464 So.2d 1003, 1004 (La.App. 1st Cir.1985).
We have ordered the appeal record supplemented with the pertinent minute entries of the CSC. We granted a rehearing to reconsider our original opinion based upon the hopefully complete appeal record.
For the statement of facts, assignments of error, and statement of issues, see the original opinion.

REFEREE'S AUTHORITY TO DECIDE APPEAL
While it is clear that prior to the 1982 amendment to Article 10, § 12(A) of the 1974 Constitution referees were only empowered to issue subpoenas, administer oaths and take testimony, it is equally clear that the 1982 amendment specifically authorized the CSC not only to appoint referees empowered as noted but also to decide removal and disciplinary cases subject to review by the commission on any question of law or fact.
Though the referee in the instant case did not have the authority to decide when the first two days of evidentiary hearings were held, this power was vested when additional evidence was taken and the decision was rendered by the referee.
As reflected by the December 7 and 8, 1982 minutes of CSC, the referee was "specifically authorized ... to render [a] decision" in the Payton appeal. The amendment to Article 10, § 12(A) of the 1974 Constitution took effect October 15, 1982. Upon the effective date of the amendment the CSC was authorized to delegate decision making power to the referee. Decision making power was delegated to the referee in the instant case at the December 7 and 8, 1982 meeting of the CSC, as reflected by CSC's minutes for that meeting which are now a part of the appeal record.
The referee concluded the evidentiary phase of Payton's appeal at a hearing on March 28, 1983 and then took the matter under advisement. On August 26, 1983 the referee rendered her decision.
The allegedly "unconstitutional rules of the Commission" are those the CSC promulgated and which took effect on the date the amendment to Article 10, § 12(A) took effect. Those rules simply supplement the amendment by providing the minutiae which has no place in the Constitution.
Although some of the evidence was adduced at hearings held before the effective date of the amendment to Article 10, § 12(A) and CSC rules promulgated thereunder, the conclusion of the evidentiary hearing and the decision of the referee occurred several months after the effective date of the amendment and the rules adopted to implement it. That is all that is required for the referee's decision to be valid, if the record contains sufficient relevant and admissible evidence to support it. Accordingly, we conclude that the first and second assignments of error of first appellant, DHHR, are devoid of merit. We now proceed to address the remaining assignments of error.

*187 DISCRIMINATION; MOTIVE OF PAYTON'S DISMISSAL
Article 10 § 8(B) of the Louisiana Constitution of 1974 provides as follows:
No classified employee shall be discriminated against because of his political or religious beliefs, sex, or race. A classified employee so discriminated against shall have the right of appeal to the appropriate commission pursuant to Section 12 of this Part. The burden of proof on appeal, as to the facts, shall be on the employee.
(Emphasis supplied.)
DHHR argues, in its reply to Payton's brief, that Article 10 § 8(B) does not extend its protective umbrella to one who is discriminated against on the basis of his union membership or his status as a union steward. DHHR's position is clear. If the bases for discrimination are not included in the Constitutional provision they are excluded.
La. Const. Art. 10 § 10(A)(1) provides, in pertinent part, that the CSC "is vested with broad and general rule-making ... powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, ... and other personnel matters and transactions." Sub-section (A)(4) states that "Rules adopted pursuant hereto shall have the effect of law and be published and made available to the public."
Pertinent Rules of the CSC, in effect at the time Payton was dismissed, provide as follows:
Rule 1.14.1
"Discrimination" means consideration of religious or political beliefs, sex, race, or any other non-merit factors.

(Effective January 1, 1975. Emphasis supplied.)
Rule 13.10
An appeal may be made to this Commission by ...
(h) Any person who alleges that he has been the subject of discrimination as defined in Rule 1.14.1.
. . . . .
(1) Any applicant for employment in the Classified Service and any employee in the Classified Service who alleges that he has been discriminated against because of his membership or nonmembership in any private organization.

(Effective January 1, 1975. Emphasis supplied.)
The referee made 19 separate findings of fact and concluded that Payton "has borne his burden of proving that he was discriminated against and subjected to disciplinary action because of his membership and active participation in the employee union." The referee quoted in part CSC Rule 9.1(a) which states that "[t]he probationary period shall be an essential part of the examination process and shall be utilized for the most effective adjustment of a new employee and for the elimination of any probationary employee whose performance does not meet the required standard of work" and she interpreted that Rule as meaning that "the dismissal or retention of the employee [will] be based upon the results of this examination." The referee then concluded that:
The evidence adduced at the hearing establishes that appellant's [Payton's] performance of his duties met the required standards of his position and that the incident cited by the appointing authority as the reason for appellant's termination did not occur as charged. Therefore, the Referee concludes that the requirements of Civil Service Rule 9.1(a) and (e) did not exist in the termination of this appellant.
We observed the well-settled principle as follows in Hughes v. Department of Public Safety, 453 So.2d 620, 623 (La.App. 1st Cir.1984):
Decisions of the Commission are subject to review by this court on any question of law or fact. La. Const. of 1974, art. X, § 12. The standard of review in appeals from the Commission is the same *188 as the standard used in reviewing decisions of the district courts, and factual determinations of the Commission will not be set aside unless they are shown to be manifestly erroneous (clearly wrong).... The appointing authority (Agency) in a disciplinary proceeding bears the burden of proving the facts contained in its allegations by a preponderance of the evidence.
We reject DHHR's argument that only those discriminations enumerated in Article 10, § 8(B) can provide the bases for an appeal to the Civil Service Commission. Civil Service Rule 13.10(h) and (1) is the basis for our holding, which rule was adopted pursuant to Article 10, § 10(A).[1] If the requisite burden of proof is met, a classified civil servant who is discriminated against because of his union membership or union activities is entitled to all the protection afforded victims of other forms of invidious discrimination.
The burden of proving discrimination rests upon the employee. Article 10, § 8(B); Civil Service Rule 13.19(m), (r) and (s). The standard of review, nevertheless, is the same in discrimination cases as in those in which the burden of proof is on the appointing authority. Now that referees are empowered to hear and decide appeals, the standard of review heretofore accorded decisions made by the Commission will be adhered to in reviewing decisions of referees.
We have carefully reviewed the transcript of the proceedings and the documentary evidence and find that the factual determinations of the referee, adopted by the CSC, are not clearly wrong. The record as a whole supports the conclusions Payton was discriminated against because of his union activities and membership and those facts, rather than those alleged in the dismissal letter, were the real bases for his termination.
Accordingly, DHHR's third, fourth and sixth assignments of error are without merit.

UNEMPLOYMENT COMPENSATION OFFSET
Payton alleges that the CSC erred in modifying the referee's order by allowing DHHR an offset against back wages upon reinstatement for "any unemployment compensation received by the appellant" as a result of his termination. That contention is without merit. Boozer v. Department of Health and Human Resources, 470 So.2d 490 (La.App. 1st Cir. 1985).

SALARY AS PUBLIC SCHOOL TEACHER
DHHR argues that the CSC's actions "in granting an offset to the appointing authority for outside wages was correct" and further contends that the CSC meant the offset to apply to Payton's salary as a teacher because "Payton had no intention of holding two full time jobs" and "the fact that he never reported back to work at Belle Chasse after reinstatement is evidence of his inability to do both jobs."
We do not agree with DHHR's apparent interpretation of the CSC's modification or its assertion that Payton never intended to hold two full time jobs because for several months he did in fact hold two full time jobs and nothing in the record of these proceedings indicates anything to the contrary.
We interpret the CSC's wages offset modification to mean that any wages or salary that Payton would have earned in *189 another "moonlighting" job to replace the one from which he was fired would be used in offsetting his entitlement to back wages ordered by the referee and affirmed by the CSC. If the CSC meant to say otherwise, we conclude that offsetting Payton's salary as a public school teacher, earned during hours other than his working hours at the DHHR facility, would be improper. Only remuneration earned in a job or position obtained to substitute for the Resident Training Aide position can validly be offset in calculating Payton's back wages.
Accordingly, the decisions of the referee and the Louisiana Civil Service Commission are affirmed. All costs of these proceedings before the referee, CSC, and this court are cast against First Appellant, DHHR, in the amount of $1,418.00. La.C.C.P. art. 2164; La.R.S. 13:5112(A).
AFFIRMED.
NOTES
[1] In its fifth assignment of error, DHHR contends Article 10, § 8(B) contains an exclusive listing of what discriminations are proscribed and that Civil Service Rules expanding this listing are ultra vires and unconstitutional. The issue of the constitutionality of the pertinent Civil Service Rules was not raised before the Referee or the Civil Service Commission; it has been raised before us for the first time. Since this issue was not raised before the Referee or the Civil Service Commission, we decline to consider it. Rule 1-3, Uniform RulesCourts of Appeal; Dent v. Department of Corrections, Hunt Correctional Center, 460 So.2d 57 (La.App. 1st Cir.1984). Cf. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984).